American Homestead Ins. Co. *v.* Denny.

5-3379                                    384 S. W. 2d 492

Opinion delivered December 7, 1964.

*W. B. Brady, Spitzberg, Bonner, Mitchell & Hays,* By: *Beresford L. Church, Jr.,* for appellant.

*McMath, Leatherman, Woods & Youngdahl,* for appellee.

Carleton Harris, Chief Justice. This litigation involves the construction of the language of the "air travel" clause in an insurance policy issued on the life of Ralph L. Denny. The policy is entirely an accident policy, and the company agrees to pay benefits up to $10,000.00 for loss of life or certain bodily injuries sustained by the insured. As to AIR TRAVEL, the company is liable for:

"Injury sustained in consequence of riding as a passenger, and not as an operator or crew member, in or on, boarding or slighting from, or being struck by any aircraft having a current and valid airworthiness certificate or any transport type aircraft operated by the

Military Air Transport Service (MATS) of the United States or by the similar air transport service of any duly constituted governmental authority of any recognized country.''

While on temporary duty at Goose Bay Air Base, Labrador, Denny, an Airman Second Class in the United States Air Force, was struck and killed by a propellor of a KC-97G (Stratofreighter). Mrs. Pearl Denny, mother of Ralph, the beneficiary under the policy, made claim to the insurer, American Homestead Insurance Company, appellant herein. The company denied her claim on the ground that Denny was a crew member of the plane, and also on the ground that the plane was of a type excluded under the provisions of the policy. Suit was thereafter instituted, and the court, sitting as a jury, found for Mrs. Denny, holding that ''Airman Ralph Denny was not a crew member of the particular plane that caused his death. Denny was not struck by an 'aircraft having a current and valid airworthiness certificate or any transport type aircraft operated by the Military Air Transport Service (MATS) of the United States,' but that he was fatally injured when struck by an aircraft operated 'by the similar air transport service of any duly constituted governmental authority of any recognized country.' '' The judgment was thereupon entered in the principal amount of $10,000.00, together with the sum of $1,200.00 as penalty, and attorneys fees in the amount of $1,000.00. From such judgment appellant has appealed.

For reversal, appellant asserts that Denny was not covered under the policy because (1) he was a crew member of the aircraft which caused his death, and (2) Denny was struck by an aircraft of a type excluded from coverage under the policy.

Inasmuch as we think appellant must prevail under the second contention, we see no necessity to discuss the question of whether he was a crew member of the aircraft which caused his death.

Let it first be said that it is agreed that the term, "airworthiness certificate" has no application to the facts in this case, since this certificate is only issued to civil aircraft. Likewise, it is admitted by appellee that the KC-97G plane is not a MATS aircraft (and, in fact, the court so found).[1]

At the outset, it might be well to discuss some of the functions of MATS (Military Air Transport Service). Air Force regulations relate that the overall mission of this branch of the Air Force "is to maintain in a constant state of readiness, the military airlift system necessary to perform all airlift tasks under emergency conditions assigned by the Joint Chiefs of Staff in approved war plans and appropriate JCS and Air Force guidance documents. MATS will supervise and operate the Air Weather Service, the Air Photographic and Charting Service, the Air Rescue Service, a domestic aeromedical evacuation system, and the 1254th Air Transport Wing, Special Missions." Additional functions mentioned, and covering several pages, include individual air transport service for the President of the United States and other government officials and foreign dignitaries, and maintaining liaison with the civil air industry. There are numerous other functions performed by MATS, which, however, are not pertinent to this litigation.

The KC-97G plane (a propeller of which struck Denny) is a part of SAC (Strategic Air Command), and the function of SAC is to bomb foreign targets in time of war. The KC-97G is a tanker plane, and is used to refuel bombers while in flight. Actually, it may be said that it serves as an airborne gasoline tank truck. Of course, there is the similarity that both a MATS plane and the KC-97G are aircraft belonging to the United

---

[1] In a letter by Colonel Paul P. Douglas, Jr., (admitted by stipulation) it is pointed out that the Stratofreighter was not assigned to, or connected with, the Military Air Transport Service, and it was not transporting gasoline, parts or material to be used by the air transport service. Captain Richard F. Leisman stated (in a letter admitted by stipulation) that Denny was assigned to the 384th Organizational Maintenance Squadron, 384th Bombardment Wing, Little Rock Air Force Base, Strategic Air Command, and the plane involved was also assigned to the same unit.

States Air Force, but we see no other similarity that would bring this type of plane under coverage in the accident policy. A passenger automobile and a gasoline truck are also similar in that both are operated by gasoline engines, both have four wheels, and both have headlights and taillights, but it could not seriously be argued that these two types of vehicles render the same service.

It will be noted that the air travel clause provides that coverage is afforded where one is injured while being transported (also boarding, alighting from, or struck) by an aircraft operated "by the Military Air Transport Service of the United States or by the similar air transport service of any duly constituted governmental authority of any recognized country." This last, to us, plainly means that one is covered when he is transported in, or struck by, a plane of a foreign country, which is a part of the air branch of that nation, the duties of which correspond to those of MATS in this country.[2] However, the "similar [to MATS] air transport service" referred to includes only the transport service provided by a "recognized country." In other words, there would be no coverage if a person were riding in a transport plane belonging to Red China, even though the plane was a part of the Chinese air arm that corresponded with MATS.

Appellee argues that this last portion of the clause does not refer to a foreign country. She seems to contend that the words, "recognized country," refer to the United States, and that SAC is a governmental authority

---

[2] As a matter of interest, it might be pointed out that the policy involved is not one which, to use a comparison, provides coverage only when a person is injured "riding a one-eyed red mule on a muddy road." Actually, the policy affords rather broad coverage for the amount of annual premium paid ($10.00). Coverage is provided for any injury sustained in consequence of driving, riding in, or being struck by an automobile, and further coverage is afforded for injury sustained while riding as a passenger, boarding or alighting from, or being struck by any aircraft holding a valid airworthiness certificate, as well as coverage under the clause quoted in this opinion. The policy provides double indemnity benefits if the injury is sustained while one is riding as a fare-paying passenger on any public conveyance owned and operated by a common carrier, which would, of course, include commercial planes, trains, and busses.

operating planes for a purpose similar to MATS. In *St. Paul Fire & Marine Ins. Co.* v. *Kell,* 231 Ark. 193, 328 S.W. 2d 510, this court, quoting from an earlier case, said:

"It is the duty of the Courts to construe the language used by the parties and such construction is performed by considering the sense and meaning of the terms which the parties have used as they are taken and understood in their plain ordinary and popular sense."

We think appellee's argument is erroneous under the plain and ordinary interpretation of the words used, and we find no substantial evidence to support the judgment of the trial court.

Reversed and dismissed.

ROBINSON and JOHNSON, JJ., dissent.