SERVICE CASUALTY COMPANY OF NEW YORK v.
ALVIN FRANKLIN VASSEAU

4619                                    431 S.W. 2d 243

Opinion Delivered September 9, 1968

*Edward M. Owens* for appellant.

*George E. Pike* for appellee.

CARLETON HARRIS, Chief Justice. This case involves the construction of an insurance policy. On April 19, 1966, Alvin Franklin Vasseau, appellee herein,[1] purchased from Service Casualty Company of New York, appellant herein, a contract of insurance providing certain coverage on a 1966 Brookwood Mobile Home. The contract covered a five-year period, from April 19, 1966, to April 19, 1971, the total premium being $298.57. The mobile home was purchased in Memphis, Tennessee, and delivered to a location in DeWitt, Arkansas. On August 10, 1966, appellee endeavored to move the home from one location to another in DeWitt by pulling it with a 1½ ton wrecker. While attempting to cross the tracks of the St. Louis Southwestern Railway Company, the frame supporting the mobile home came in contact with the track,[2] causing certain damage, viz., the frame was bent, certain bolts connecting the frame

---

[1] Universal C.I.T. Credit Corporation, also an appellee in this case, filed an intervention, claiming a lien on the mobile home in the amount of $4,831.68.

[2] A piece of the angle iron under the trailer became hung on one of the rails.

to the floor were torn loose, and the floor, walls and interior of the property were damaged. Appellee instituted suit against appellant, contending that the damage was covered under his insurance policy. The company denied liability, and on trial the jury returned a verdict for Vasseau in the amount of $1,405.00. From such judgment, appellant brings this appeal. For reversal, appellant contends, first, that it was entitled to a directed verdict, and in the alternative that the verdict was excessive.

The provision of the policy in question sets out that the company will pay for loss of, or damage to, the mobile home occurring during the policy period, when the loss or damage is caused directly and accidentally by one or more of the following perils: "Stranding,[3] sinking, falling, burning, collision or derailment of any conveyance in or upon which the mobile home is being transported." It is simply appellant's contention that, since the mobile home was traveling on its own wheels as it was pulled over the track and damaged, there is no liability; that the policy only provided coverage if the home was being hauled on a separate and distinct conveyance; that to hold that the undercarriage or frame of the mobile home was a conveyance would be a strained and unnatural definition of the word.

We do not agree that appellant was entitled to a directed verdict, and there was ample evidence to justify the finding of the jury. The proof reflects that this property is 12 feet wide and 60 feet long, a fact known to both parties. It has 3 axles and 6 wheels, the wheels approximately 10 to 12 inches apart. This is a rather large house trailer, and would require a large vehicle to transport it; and the jury may well have considered that there would be no point in having wheels on the mobile home if it were contemplated that it would be hauled from place to place on another vehicle. It is common knowledge that these mobile homes are tow-

---

[3]Coverage is claimed under this provision.

ed up and down the highways each day traveling on their own undercarriages and wheels. Appellee states in his brief:

> "The undercarriage of a mobile home 12 Ft. by 60 Ft. with three axles and six wheels could certainly be considered as being a conveyance in its own right. Therefore, if the construction placed on this contract of insurance by the appellant were to be accepted it would amount to a finding that the appellee had bought insurance which could never be of benefit to him for the reason that he would never be able to mount such a mobile home upon any other conveyance unless the other conveyance were large enough to be a monstrosity."

This is apparently the view taken by the jury. The most that can be said for appellant's position is that the language may be considered ambiguous—but this, of course is of no aid to the company, for it prepared the policy, and any ambiguity is construed in favor of the insured.

A succinct discussion concerning the construction of insurance contracts is found in 29 Am. Jur., Section 247, Page 628, as follows:

> "As in the case of contracts generally, the cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. If the intention of the parties can be clearly discovered, the court will give effect to that intention within the sphere of its proper and legal operation and will construe accordingly the terms used in the policy, no matter how inept, ungrammatical, or inaccurate they may appear when viewed strictly or legally. The rule is that once the intention of the parties is clearly ascertained, a policy of insurance is to be liberally construed in order to carry out

that intention, especially where a liberal construction is the reasonable one and a literal construction would lead to manifest injustice."

Here, we think the circumstances (size of the mobile home, and the undercarriage being equipped with 6 wheels) and the other evidence justified the jury in determining the intention of the parties when they entered into the contract, which, under the testimony, appears entirely reasonable.

Appellant also asserts that the verdict of the jury was excessive. This contention is based upon the fact that Howard Spurlock, whose testimony was introduced by appellant, testified that the trailer could be repaired for the sum of $814.34. Appellant states that this witness was the only person testifying who was in the business of repairing mobile homes. W. W. Smith, engaged in the general construction business, estimated the damage at $1,680.00; Lester Capps, a carpenter, estimated the repairs at $1,405.00. Capps was assisted in making his estimate by Hardy Purdy, also a carpenter. It was within the province of the jury to determine which testimony to accept, and though appellant's witness may have had more experience in this particular line of work, it would appear that all were competent to testify. Certainly, we cannot say that the amount of the judgment was excessive.

Affirmed.

Jones, J., dissents.