The Glens Falls Group Insurance Company v.
James M. Simpson

5-4861                                    439 S.W. 2d 292

Opinion Delivered April 14, 1969

*Reinberger, Eilbott, Smith & Staten* for appellant.

*Bridges, Young, Matthews & Davis* for appellee.

J. Fred Jones, Justice.    This is an appeal by The
Glens Falls Group Insurance Company from an adverse
judgment of the Jefferson County Circuit Court award-

ing medical payments to James M. Simpson under a medical endorsement to an insurance policy issued to Rosswood Country Club.

It was stipulated that the appellee, Simpson, and three companions had played several holes of golf at the Rosswood Country Club when it commenced to rain. As they made their way to the shelter of the clubhouse, appellee stopped under the cover of a large tree where he was struck by lighting and sustained injuries resulting in medical expenses amounting to $186.65.

The appellee filed claim for medical expenses under the provisions of the policy. The appellant insurance company denied coverage under the policy and refused payment. The appellee filed suit in the Municipal Court of Pine Bluff where judgment was rendered for the insurance company. The circuit court, on appeal, reversed the judgment of the municipal court and rendered judgment for the appellee Simpson. On appeal to this court the appellant, Glens Falls, designates the following points for reversal:

"The injuries sustained by the appellee were not caused by accident and did not arise out of the ownership, maintenance or use of the insured premises by the Rosswood Country Club and that there is no coverage under the policy issued by the appellant.

That at the time of the incident described in the complaint, appellee was participating in a sport and such activities are clearly excluded from coverage under appellant's policy."

The point actually involved in this case is whether the insurance contract insured the named insured, Rosswood Country Club, against its own liability or whether it insured the members and guests of the club against medical expenses incurred because of accident arising

out of ownership, maintenance or use of the club premises.

Apparently the entire insurance contract was not made a part of the record in this case and the copy of the endorsement that is before us, is on printed form obviously designed more for individuals rather than country clubs as named insureds.

Under its first point appellant argues that it properly denied coverage under the language of the insurance policy "Insuring Agreement" which states:

"The company agrees with the named insured to pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devises, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, *caused by accident and arising out of the ownership, maintenance or use of premises by the named insured* and the ways immediately adjoining, or operations of the named insured, subject to the following provisions." (Emphasis supplied.)

Accident has acquired the meaning of a happening or event out of the usual order of things or not reasonably to be anticipated. Webster defines it as "an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and, therefore, not expected"; and Bouvier defines it as "an event which, under the circumstances, is unusual and unexpected by the person to whom it happens." Bouv. Law Dict, vol 1, p. 51. See Appleman, Insurance Law and Practice, vol. 1A, § 391, footnote 12, p. 20.

The policy endorsement does not define the term "accident" as used in the policy and injury by lightning

is. not excluded. We conclude, therefore, that the trial court did not err in holding that the appellant's injury was caused by accident.

As to the principal issue, it is noted that "the company agrees with the named insured to pay" (not the expenses the *named insured* is required or obligated to pay), but "all reasonable expenses *incurred* . . . to or for each person who sustains bodily injury, sickness or disease, caused by accident arising out of the ownership, maintenance or use of premises by the named insured." (Emphasis supplied.) Did the accident here arise out of the ownership, maintenance or use of the premises by the named insured? We are of the opinion that there was some substantial evidence to support the trial court's decision that it did.

The named insured owned, maintained and used the premises as a golf course where the appellee's accident occurred, and there is no evidence that appellee would have been on the premises had the named insured not been using the area for a golf course. There is substantial evidence that appellee's injury arose out of the club's use of the premises as a golf course. There are fifteen exclusions from coverage set out in the policy endorsement and being struck by lightning is not one of them. When the endorsement is examined for coverage in the light of the specific exclusions, it is difficult to determine what is covered under the endorsement if appellee's medical expenses are not.

As to appellant's second point, exclusion (b) under the endorsement provides as follows: This insurance does not apply:

"to bodily injury, sickness, disease or death sustained by any person practicing, instructing or participating in any physical training, sport, athletic activity or contest, unless this exclusion is specifically stated to be inapplicable."

The appellee did not sustain his injury while practicing, instructing or participating in any physical training, sport, athletic activity or contest, he sustained his injury while standing under a tree. He was not struck by a golf ball he was struck by lightning. He *had been* participating in a golf game, otherwise he would not have been under the tree on the premises owned, maintained and used by the club as a golf course. We find appellant's second point without merit.

Liability insurance is distinguished from accident insurance in 44 C.J.S. 474 as follows:

"... [L]iability insurance is a variety of accident insurance, but it is distinguishable from accident insurance in that accident policies, strictly speaking cover accidents happening to the person of insured. While liability policies cover accidents to others than insured, provided insured stands in such relation to the person accidentally injured or killed *as to be legally liable for the result of the accident.*" (Emphasis supplied.)

The law is well settled in Arkansas that ambiguities in, and uncertainties as to the meaning of, the terms used in insurance policies will be interpretated most favorably to the insured and against the insurer who drew the contract. *Hope Spoke Co.* v. *Maryland Casualty Co.*, 102 Ark. 1, 143 S.W. 85 and the numerous other cases listed in 10A West's Ark. Digest 146.6.

The judgment of the trial court is affirmed and appellee's attorney is awarded an additional fee in the amount of $300.00.

Affirmed.

HARRIS, C.J., not participating.

FOGLEMAN, J., dissents.

John A. Fogleman, Justice. I readily agree with the majority that appellee's having been struck by lightning was caused by accident. I feel that the majority have totally ignored the fact that there is an additional requirement to bring an accident within the coverage of the policy. The injury must have been ''caused by accident and *arising out of the ownership, maintenance or use of premises by the named insured* and the ways immediately adjoining, or operations of the named insured . . .'' The majority does not explain how being struck by lightning arises from the ownership, maintenance or use of the premises by Rosswood Country Club or the operations of Rosswood Country Club, nor does it cite any authority, even though it says it finds substantial evidence that it did. If appellant had been struck by a golf ball or if he had been struck by a golf cart propelled by a fellow golfer, I could readily say that he had suffered injuries caused by an accident and that they had arisen out of the use of the premises or the operations conducted thereon by Rosswood Country Club. I am incapable of understanding how it can be said that the lightning bolt, or its striking Simpson while he was on the golf course, arose in a manner to bring this claim within the coverage of the policy.

An accident arising out of the ownership, maintenance or use of premises or operations certainly contemplates an accident immediately identifiable with ownership, maintenance or use of the premises or operations by the named insured. While I do not know of any case in which we have treated the particular question in Arkansas, it has been treated in other states. The logic of my position is so well stated in some of these cases that I prefer to refer to some of them, rather than to further expound upon the subject.

In *National Union Fire Insurance Company of Pittsburgh* v. *Bruecks,* 179 Neb. 642, 139 N.W. 2d 821 (1966), the driver of an automobile was injured by the accidental discharge of a loaded gun in the hands of a minor

passenger who was being transported home after a hunting trip. The insurance policies in question afforded coverage for "* * * bodily injury * * * arising out of the ownership, maintenance or use * * * of the * * * automobile." The following are excerpts from the opinion in that case:

" * * * The gun did not discharge as a result of being in the vehicle or for any reason even remotely connected with the vehicle. It seems clearly apparent that the tort action is not premised upon any connection with the automobile in which the shooting occurred, except as describing the situs of the act.

* * * It seems patent, however, that some causal relation must exist between the injury and the use of the vehicle to come within the ambit of 'arising out of the use of a vehicle.' Many courts have found a causal relation to exist if the use was connected with the accident or the creation of a condition that caused the accident. The proximate cause of the injury here was the discharge of the gun. Was the discharge of the gun during the use of the automobile a sufficient connection with its use to be within the coverage provided by the 'arising out of the use' clause of the Allstate and St. Paul policies? To put it another way, we must determine whether the fact that Scott Campbell was riding in the automobile at the time of the accident, making the automobile the situs of the accident, constitutes the accident one 'arising out of the use of' the automobile, or, if not, whether it constitutes the creation of a condition that caused the accident within the terms of the policy. In this connection, it may be pertinent to observe that the injury could never have happened if Scott Campbell had not had a loaded gun in his possession in the automobile. The accident could just as readily have happened in the Bruecks' living room if Scott Campbell had carried the gun into the Bruecks' home. * * *

\* \* \* The words 'arising out of the use' are very broad, general, and comprehensive terms, and are ordinarily understood to mean originating from growing out of, or flowing from. See *Schmidt* v. *Utilities Ins. Co.*, 353 Mo. 213, 182 S.W. 2d 181, 154 A.L.R. 1088.''

In *London & Lancashire Indemnity Company* v. *Duryea*, 143 Conn. 53, 119 A. 2d 325 (1955), the Supreme Court of Errors of Connecticut said:

'' \* \* \* By the plain terms of the policy, the plaintiff agrees to pay on behalf of its insured all sums which the insured may become obligated to pay by reason of the liability imposed upon her by law for damages 'because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of' the hazard covered in the policy. That hazard is defined as the 'ownership, maintenance or use' of the described premises for a restaurant which includes, though it is not expressly so stated, the sale of intoxicating liquor. The decisive words are 'caused by accident and arising out of.' It seems obvious that these words modify 'bodily injury, including death \* \* \* resulting therefrom.' The bodily injury must be 'caused by' accidental and intentional means. 7 Appleman, op. cit., § 4312. So far as the instant case is concerned, it must arise out of the sale of intoxicating liquor. The words ''arising out of'' mean 'caused by.' *Larke* v. *John Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 309, 97 A. 320, 322 L.R.A. 1916E, 584; *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 384, 103 A. 115, L.R.A. 1918E, 496; *Allen* v. *Travelers Indemity Co.* 108 Vt. 317, 323 187 A. 512.''

I can add nothing to the clear expressions of these two courts.

I find no ambiguity. I agree with the rule of construction of insurance policies against the insurer where there is an ambiguity. I do not believe that the courts can import an ambiguity for the purpose of construing the policy against the insurance company. I would reverse the judgment of the circuit court and dismiss the cause.