[Civ. No. 14544. Fourth Dist., Div. One. Mar. 11, 1977.]

PEPPER INDUSTRIES, INC., Plaintiff and Respondent, v.
HOME INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Haight, Lyon, Smith & Dickson, Haight, Dickson, Brawn, Bonesteel & Rigg and Roy G. Weatherup for Defendant and Appellant.

Wingert, Grebing & Anello, Wingert, Grebing, Anello & Chapin, John R. Wingert and Michael M. Anello for Plaintiff and Respondent.

## OPINION

AULT, Acting P. J.—Respondent Pepper Industries, Inc. (Pepper) filed this action in declaratory relief against Harbor Insurance Company (Harbor) and appellant Home Insurance Company (Home) and was granted summary judgment determining that the general liability insurance policies issued by the two companies provide coverage for Pepper's liability, if any, to the City of San Diego for an explosion and fire allegedly resulting from Pepper's discharge of some 5,000 gallons of gasoline into the city sewer system on February 6, 1973. The judgment specifically declares the "pollution endorsement" in each policy does not exclude coverage for the incident. The city had filed a complaint against Pepper and others, alleging both negligence and willful misconduct and

seeking $250,000 for property damage, $50,000 for the cost of fire suppression, and apparently $250,000 in punitive damages in addition.[1]

Harbor, Pepper's primary insurer under a policy with a property damage limit of $100,000 per occurrence, did not oppose Pepper's motion for summary judgment and has not appealed. Home, Pepper's excess insurer under a policy providing coverage for property damage over $100,000 up to $1 million, opposed the motion and now appeals from the judgment, contending:

(1) The judgment does violence to the plain language of the pollution endorsement, and even if some ambiguity is found in its language, uncontradicted evidence supports Home's contention its policy was not intended to cover the City's claim for property damage arising out of the discharge of a petroleum derivative, for fire suppression costs, or for punitive damages.

(2) In any event, it was error to grant the summary judgment because there were triable issues of fact.

As part of the insuring agreement of its policy, Home agreed, subject to the limitations stated later in the policy, to indemnify Pepper for all sums Pepper became obligated to pay by reason of liability imposed by law for property damage, direct or consequential and expenses; property damage was defined as loss of or direct damage to or destruction of tangible property other than that owned by the named insured.

Attached to the policy as endorsement 8 was what is commonly called a "pollution endorsement" and which stated:

"In consideration of the premium charged, it is agreed that this policy does not apply to:

"1) Bodily Injury or Property Damage arising out of the discharge, dispersal, release or escape of oil or other petroleum derivatives or substances (including oil refuse or oil mixed with wastes) smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land,

---

[1]The city's complaint in the above action has not been made a part of the record on appeal.

the atmosphere or any watercourse or body of water; whether or not sudden and accidental.

"2) the cost of removing, nullifying or cleaning up seeping, polluting or contaminating substances.

"3) loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Insured.

"4) removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others.

"5) to expenses incurred or to bodily injury, sickness, disease or death or injury to or destruction of property, including the loss of use thereof, resulting from the emission of gases, fumes, smoke, vapors or other air pollutants.

"6) loss of hole or in-hole equipment, or any expense incurred by the Insured in regaining control of any oil and/or gas well.

"7) fines, penalties, punitive or exemplary damages resulting from seepage, contamination or pollution."

After filing this action for declaratory relief against both Harbor and Home and receiving their answers to written interrogatories, Pepper moved for summary judgment on the ground there were no triable issues of material fact and that as a matter of law the policies provided coverage, and the pollution endorsements did not exclude coverage, for its liability arising out of the explosion and fire. With its notice of motion, Pepper filed a declaration by Yale Combs, its vice president, briefly describing the two insurance policies and the city's lawsuit against Pepper and asserting that the two insurance companies had rejected its claims on the basis of their pollution endorsements. Before the hearing Pepper filed two additional declarations: one by its attorney, John R. Wingert, disclosing that Harbor had indicated it would pay the full policy limit and not appear at the hearing; the other declaration by Jon R. Robson, stating he had acted as the agent of Home, and attaching a complete copy of the Home policy and its various endorsements.

In opposition Home filed the declaration by Leonard Beiser, its Los Angeles claims representative for excess insurance. After stating he was

responsible for the interpretation of endorsements to excess policies and was familiar with the alleged facts underlying the lawsuit, Beiser declared: "The Home endorsement was specifically drafted to exclude the type of release of gasoline into a public sewer which allegedly occurred here, or the release of *any* petroleum products by *any* means into *any* medium. The endorsement was so worded to reflect that intent. Furthermore, I understand the premium set by the Home Insurance Company was significantly lower than the premium which would have been charged for the coverage for which Pepper Industries, Incorporated, argues."

In December 1974, after oral argument by counsel, the court granted *the motion for summary judgment without explanation.* In January 1975 the court signed a judgment declaring both insurance policies provide coverage for the February 6, 1973 incident " . . . as alleged in the City of San Diego's complaint, and that the pollution endorsement in each said policy does not exclude coverage for liability, if any, arising out of the alleged discharge of a petroleum type substance into the City of San Diego's sanitary sewer system by plaintiff, which ignited and caused damage to said sewer system and a pumping station."

## DISCUSSION

█ Summary judgment is an appropriate vehicle to determine coverage under an insurance policy when it appears there is no material issue of fact to be tried and the sole issue before the court is one of law (Code Civ. Proc. § 437c; *Lincoln Sav. & Loan Assn.* v. *Title Ins. & Trust Co.,* 46 Cal.App.3d 493, 498 [120 Cal.Rptr. 219]; *Burke Concrete Accessories, Inc.* v. *Superior Court,* 8 Cal.App.3d 773, 775 [87 Cal.Rptr. 619]). Beiser's declaration concerning the intent of the pollution endorsement was a mere expression of opinion and as such was insufficient to raise a triable issue of fact (*Reida* v. *Lund,* 18 Cal.App.3d 698, 702 [96 Cal.Rptr. 102]; *Fuller* v. *Goodyear Tire & Rubber Co.,* 7 Cal.App.3d 690, 693 [86 Cal.Rptr. 705]). Moreover, Beiser's opinion as to the interpretation the terms of the pollution endorsement was immaterial. Since there was no conflicting parol evidence concerning the endorsement, its meaning and purpose was an issue of law for the court to resolve. The final statement in Beiser's declaration relating his "understanding" about the amount of premium charged was not a statement of fact within his personal knowledge.

Home's reliance upon an apparent conflict between Robson's declaration and its own earlier answers to interrogatories to raise a factual issue is misplaced. Home did not direct the trial court's attention to those papers. In any event, Robson's agency was not a material issue. Pepper relied solely on the terms of the policy. Home has never contended the policy was not duly issued or was not in full force and effect when the explosion and fire occurred.

Since Home did not raise any triable issue of material fact, Pepper's motion for summary judgment raised only legal issues which it became the court's mandatory duty to determine on the motion before it (*Burke Concrete Accessories, Inc.* v. *Superior Court, supra,* 8 Cal.App.3d 773, 775).

■ The substantial issue presented by the appeal is whether Home's policy afforded Pepper coverage for its liability to the city for the loss resulting from the fire and explosion. Home contends its liability is excluded by endorsement 8, set out in full above.

■ Where, as here, the interpretation of a contract is not dependent upon conflicting extrinsic evidence, this court may make its own independent determination of the contract's meaning (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]). ■ Under rules of construction applicable to insurance policies, any uncertainty or ambiguity must be resolved against the insurer and, if semantically possible, the policy must be construed so as to achieve its manifest object of indemnifying the insured against the losses to which the policy relates (*Crane* v. *State Farm Fire & Cas. Co.,* 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]).

■ To be effective, an exclusionary clause must be "conspicuous, plain and clear." Exclusionary clauses must be construed strictly against the insurer and liberally in favor of the insured (*ibid.,* pp. 115-116; see also *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]).

■ Pointing out that an insurer has a right to limit its coverage and that courts must respect an exclusion which is plain and explicit (*Jensen* v. *Traders & General Ins. Co.,* 52 Cal.2d 786, 791 [345 P.2d 1]), Home contends the plain language of its pollution endorsement clearly shows it was intended to exclude coverage for claims such as the city's. Home

argues a sewer system can reasonably be called a "watercourse" and, in any event, meets the definitions of "land" found in various statutes and case law. It contends the words "land, the atmosphere or any watercourse or body of water" used in subsection (1) of endorsement 8 are "all inclusive," clearly intended to exclude coverage for the discharge of petroleum derivatives and the other noxious substances listed in the subsection from any and all possible areas, including sewers.

Home's argument is only partially persuasive. We are inclined to agree that the words used in the endorsement were intended to include any and all possible areas of discharge, but they cannot expand the purposes for which the endorsement itself was obviously intended. A fair reading of the endorsement leads to the conclusion it was intended to exclude insurance coverage resulting from pollution and contamination of the environment, be it land, water or the atmosphere. Although the city's sewer and pumping station may reasonably be said to fit into one or more of these categories, the fact remains the city is not claiming its facilities were polluted or contaminated but rather that they were destroyed or damaged by an explosion and fire. The terms "fire," "conflagration" and "explosion" are not foreign to insurance companies and are frequently used in insurance policies. If Home intended endorsement 8 to exclude coverage for damage resulting from such incidents, it could have done so by the use of a few precise and specific words. Endorsement 8 makes no mention whatsoever of fire and explosions, and we cannot read an exclusion of coverage for damages resulting from such phenomena into its terms without doing violence to well-established rules governing the interpretation of insurance policies and exclusionary clauses in particular.

We are satisfied endorsement 8 is a "pollution endorsement" (even Home so describes it on occasion in the papers and records before us), intended and designed to exclude coverage resulting from pollution and contamination. If Home also intended this exclusion to apply to damages resulting from fire and explosions, its duty was to state and define such exclusion in a "conspicuous, plain and clear" manner (*Crane* v. *State Farm Fire & Cas. Co., supra,* 5 Cal.3d 112, 115; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 273). This it failed to do.

Home also contends the policy does not afford coverage for fire suppression costs because such costs are not "tangible property" as defined in the policy. Fire suppression costs would appear to be covered

by the insurer's agreement to pay for "property damage, direct or consequential and expenses." In any event, the augmented record on appeal shows that Pepper and the city have now settled the entire controversy between them for $132,500 and that the city has furnished Pepper a release specifically waiving all claims for fire suppression costs. The issue is moot.

Finally, Home claims the summary judgment is erroneous because Insurance Code section 533 precludes insurance for willful torts such as the city had alleged in its third cause of action, and that endorsement 8 specifically excluded coverage for punitive damages. The augmented record on appeal shows that the city had withdrawn any claim for punitive damages in its suit against Pepper eight months before the motion for summary judgment was argued and granted in this action. Thus it became and remains a nonissue in this case.

The judgment is affirmed.

Cologne, J., and Whelan, J.,* concurred.

A petition for a rehearing was denied March 28, 1977, and appellant's petition for a hearing by the Supreme Court was denied May 19, 1977.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.