FARM BUREAU MUTUAL INSURANCE
COMPANY OF ARKANSAS, INC. *v.*
James MILBURN et ux

80-73                                    601 S.W. 2d 841
Supreme Court of Arkansas
Opinion delivered June 30, 1980

*Laser, Sharp, Haley, Young & Huckabay, P.A.,* for appellant.

*Henry Morgan,* for appellees.

FRANK HOLT, Justice. The appellees were involved in a one vehicle traffic accident. The court, sitting as a jury, found that an insurance binder was in effect at the time of the accident, and the appellant insurer was liable to the appellees in the amount of $4,431 plus 10% interest from the date of the judgment until paid. The sole issue presented by this appeal is whether the decision of the trial court is clearly erroneous. Ark. Rules of Civil Proc., Rule 52, July 1, 1979.

The facts are essentially undisputed. The appellant issued a 30 day oral insurance binder to the appellees effective April 17 and received appellees' check for $118 in payment of the premium. Appellant's local agent advised Mr. Milburn that additional information would be needed: namely, his wife's driver's license number and her date of birth. On May 16, appellant sent a notice of cancellation to the appellees which stated:

> Jim Milburn from Joy Crafton, pickup insurance, date 5/16/77. I am returning your payment in the full amount of $118.00. We cannot continue the binder on your vehicle as we have not received the driver's license number and date of birth of your wife. If you still want the insurance, return the check along with the necessary information and we will proceed. Thanks.

We first consider appellant's argument that the evidence does not establish the requested information and the premium check were mailed before the accident. The

appellant received the requested information and a check from the appellees in the morning mail of May 24. Appellees were involved in a one vehicle accident approximately 1:20 a.m. on May 24. Mr. Milburn maintained he and his wife mailed the requested information late in the afternoon of May 23, or a little bit after dark, in a letter dated May 21. According to him, receipt of the cancellation notice was delayed because of a change of address. His wife testified that she had written the letter a day or two before it was mailed. She corroborated her husband's testimony that the letter to the appellant was mailed before the accident. It was stipulated by the parties that since the envelope was postmarked May 24, it had to have been mailed between 5 p.m. on May 23 and 4 a.m. on May 24. Suffice it to say that although there are inconsistencies in appellees' testimony, we are of the view that the court's finding was not clearly in error on the issue as to when the letter was mailed.

Even so, appellant asserts the receipt of the requested information and check from the appellees was ineffective to automatically reinstate the oral binder agreement and thereby provide coverage for the May 24 accident. The determination of whether the appellees' vehicle was covered at the time of the accident turns on the meaning of the notice of cancellation which, as indicated, reads: "If you still want the insurance, return the check along with the necessary information and we will proceed." Appellant argues that this communication could not constitute an offer to automatically accept Mr. Milburn's application and premium check for a second binder since the original 30 day binder had expired several days previously; the local agent only had authority to issue a binder for 30 days; and since appellant had returned Mr. Milburn's second check or premium payment, it was justified in refusing coverage.

The resolution of the meaning of the writing in question depends upon the conditions enumerated in the writing and whether the appellees had complied. We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning. See *Southern Farm Bureau Casualty Ins. Co.* v. *Williams*, 260 Ark. 659, 543 S.W. 2d 467 (1976); and *American Homestead Ins.* v.

*Denny*, 238 Ark. 749, 384 S.W. 2d 492 (1964). Further, a written instrument, such as a contract, binder, application or memorandum, delivered by the insurer to an applicant, is strictly construed against the insurer where the language employed is ambiguous or susceptible to one or more reasonable interpretations. See *Glen Falls Ins. Co.* v. *Simpson*, 246 Ark. 654, 439 S.W. 2d 292 (1969); *Dove* v. *Ark. National Life Ins. Co.*, 238 Ark. 1033, 386 S.W. 2d 495 (1965); and *Service Casualty Co. of New York* v. *Alvin Franklin Vasseau*, 245 Ark. 63, 431 S.W. 2d 243 (1968).

Here, admittedly, the local agent had the authority and did issue a 30 day oral binder. It was cancelled by the agent at the expiration of 30 days because of appellees' noncompliance as to the requested information. However, at the time of the cancellation, the appellant's agent, as indicated, notified Mr. Milburn that "[i]f you still want the insurance, return the check along with the necessary information and we will proceed." He complied about a week later. There is no evidence, at least none communicated to the appellees, that another 30 day binder was precluded. When Mr. Milburn complied with the requested conditions, he did all that was then or originally expected or required of him. In view of the situation of the parties and the total transaction, it appears to us that this communication is ambiguous and susceptible to one or more reasonable interpretations and, therefore, must be strictly construed. When we give effect to a reasonable interpretation or expectation, we cannot say that the trial court was clearly in error in finding that a binder agreement existed and provided coverage for the accident.

Affirmed.

Fogleman, C.J., and George Rose Smith and Hickman, JJ., dissent.

George Rose Smith, Justice, dissenting. Even assuming that Milburn's letter and check were mailed before the accident — an assumption open to serious doubt — the majority is still wrong. The information and check were in the mail when the accident happened. That means that, in order for the act of mailing to constitute an acceptance, the insurance

company's offer to issue a policy must have been definite and complete. Restatement, Contracts, §§ 22 and 64 (1932).

That is simply not true. To begin with, the notice of cancellation was merely a letter written by the local agent, as to which there is no rule of strict construction. But even if there were, all the letter said was that if you will send us certain information and a check, "we will proceed." Webster's Second New International Dictionary (1934) contains many definitions of "proceed," but not one of them means what the majority have read into the word. To proceed is to continue, to go forward. To proceed on a journey does not mean to arrive at one's destination. Here the company had to be satisfied with the information before a policy would be issued. The majority have simply created an ambiguity where there is none and then resolved it against the insurance company, which amounts to nothing less than rewriting the agent's language to say what it did not say.

FOGLEMAN, C.J., and HICKMAN, J., join in this dissent.