CONLEY TRANSPORT, INC. *v.* GREAT AMERICAN INSURANCE CO.

92-815                                        849 S.W.2d 494

Supreme Court of Arkansas
Opinion delivered March 22, 1993

*Boyett, Morgan, Millar & Killough, P.A.*, by: *Larry Killough, Jr.*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Lizabeth Lookadoo*, for appellee.

JACK HOLT, JR., Chief Justice. Appellant Conley Transport, Inc. (Conley), is a White County trucking company. Appellee Great American Insurance Companies (Great American), is the insurer of Conley Transport under a truckers physical damage policy. This policy only covered physical damage to Conley's trucks.

On November 4, 1990, Conley's driver was in a wreck in Oklahoma with Todd Bridson, who was insured by Farmers

Insurance Group (Farmers). Conley sustained physical damage to its truck of $17,143.67 and $18,500.00 in lost net income from the truck being out of use for two and one-half months.

Great American paid Conley $14,068.37, or $17,143.67 less the deductible and other adjustments for physical damages to its truck. Conley settled for an additional $10,000.00 in monies from Mr. Bridson's insurer, Farmers. This payment represented Bridson's maximum amount of coverage. In exchange, Conley executed a release discharging Mr. Bridson "from any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to property damage arising from" the accident.

Mr. Bridson filed a negligence action on October 21, 1991, in Oklahoma against the State of Oklahoma, Duit Construction, Inc., and Action Supply Company, for injuries to himself and a daughter and for the death of another daughter, all passengers in the wrecked car.

On December 23, 1991, Great American filed suit against Conley seeking reimbursement for the $14,068.17 it paid Conley since Conley had accepted $10,000 from Farmers and not paid it to Great American in contravention of its subrogation clause and because Conley wrongfully signed a release preventing Great American from pursuing responsible parties. Conley assigned its rights in connection with the Oklahoma lawsuit to Great American on February 21, 1992.

After a bench trial the court entered a judgment in favor of Great American for $14,068.37 plus taxable costs, finding that Conley had breached the terms of its insurance contract by executing the release, by effectively depriving Great American of its rights of subrogation and by failing to protect Great American's rights.

We disagree with the trial court and reverse its judgment.

The language of Great American's "TRUCKERS PHYSICAL DAMAGE POLICY" reads in part:

> If we make any payment, we are entitled to recover what we paid from other parties. Any person to or from whom we make payment must transfer to us his or her rights of

recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

The proof of Loss Form which Conley submitted to Great American stated:

The insured hereby subrogates the said company to all rights and causes of action the said insured has against person, persons, or corporations whomever to the extent of amount claimed above *for damages arising out of or incident to said loss or damage to said property.*

(Emphasis ours.)

The truckers' physical damage policy is physical damage insurance which only obligates Great American to pay for physical damages to Conley's truck and it is obvious from an examination of Great American's proof of loss form, executed by Conley, that payment to it of some $14,068.37 was payment of the "whole loss" to his property, i.e. damage to his 1991 Kenworth truck, nothing more.

This being the case, a fair reading of these documents reveals that Conley's policy with Great American merely encompassed payments of monies for the physical damage to the truck. And for this reason, Great American's subrogation claim for recovery against other parties for damages arising out of or incident to the loss or damage to Conley's property is limited to a claim for reimbursement on monies paid for damage to the truck. Conley's settlement with Farmers, for which a release was executed, was not for damages *to* its truck, but was for "damages resulting from or relating to his property damage" as stated in its release. It is obvious to us that settlement with Farmers for $10,000.00 was not a double payment to it for property damage to the truck, but rather was payment toward the alleged $18,500.00 Conley claims in lost net income which resulted from the fact that the damaged truck could not be utilized until the appropriate repairs were made.

██ Thus, we conclude that by executing this release, Conley did not deprive Great American of its right of subrogation against third parties for recovery for property damages only. We have long recognized the first rule of interpretation of a contract is

to give to the language employed the meaning which the parties intended. *First Nat'l Bank of Crossett* v. *Griffin*, 309 Ark. 164-I, 832 S.W.2d 817 (1992); *Green* v. *Ferguson*, 263 Ark. 601, 567 S.W.2d 89 (1978); *C & A Constr. Co., Inc.* v. *Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974); *Lee Wilson & Co.* v. *Fleming*, 203 Ark. 417, 156 S.W.2d 893 (1941). This rule applies equally to insurance contracts:

> In *American Homestead Ins. Co.* v. *Denny*, 238 Ark. 749, 384 S.W.2d 492 (1964), we reiterated:
>
> > It is the duty of the Courts to construe the language [in an insurance contract] used by the parties and such construction is performed by considering the sense and meaning of the terms which the parties have used as they are taken and understood in their plain ordinary and popular sense.

*Southern Farm Bureau Casualty Ins. Co.* v. *Williams*, 260 Ark. 659, 662, 543 S.W.2d 467, 468-9 (1976). *See also Universal Sec. Ins. Co.* v. *Ring*, 298 Ark. 582, 769 S.W.2d 750 (1989).

In short, we cannot agree with the trial court that Conley breached the terms of its insurance contract by executing the release with Farmers or that Conley has effectively deprived Great American of its subrogation or has failed to protect Great American's rights. With regard to the latter, it is noted that Conley has assigned its rights to Great American in connection with an Oklahoma lawsuit and has agreed to cooperate fully with Great American toward the end of asserting its subrogation rights.

For these reasons, we reverse the findings of the trial court.

GLAZE and BROWN, JJ., concur.

TOM GLAZE, Justice, concurring. The majority court reverses, and sets aside Great American Insurance Company's judgment against Conley Transport. That judgment reimbursed Great American Insurance proceeds it earlier paid Conley. The court holds Great American Insurance can get reimbursed from others by exercising its subrogation rights provided under its policy with Conley. In brief, this court finds Conley Transport, Inc. did not breach the Company's policy terms nor deprive Great

American Insurance Company's right of subrogation against tortfeasor Todd Bridson and other parties by Conley's executing a release discharging Mr. Bridson. In sum, the court says the terms of the release were narrowly drawn and, as worded, do not bar Great American from exercising its subrogation claim against Mr. Bridson. This is a fine distinction in which I need not indulge. In my view, Great American simply has no right of subrogation under the facts of the case because Conley Transport has yet to be made whole for all its losses. *See Shelter Mut. Ins. Co.* v. *Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992); *see also* 6A John A. Appelman & Jean Appelman, Insurance Law and Practice § 4095, at 275 n. 59 (1972). Under the parties' insurance policy, Great American has no subrogation right against Conley Transport because Conley Transport has never fully recovered its losses. Therefore, the trial court erred in giving Great American judgment against Conley Transport.

ROBERT L. BROWN, Justice, concurring. I agree with the majority opinion but write only to clarify my position on subrogation rights in this case when double recovery for the same risk is the issue.

We have recently had a spate of subrogation cases where the issue presented was whether the injured party was entitled to be made whole by his insurance carrier and the insurance carrier of any third-party tortfeasor for all property and personal injury damages incurred before subrogation rights would be effective, or, alternatively, whether the injured party's carrier would be subrogated to benefits paid by a third-party carrier irrespective of whether the injured party had been fully compensated.

The right of an injured party to be made whole and an insurance carrier's right to subrogation are both equitable principles. *Couch on Insurance 2d*, § 61.20, p. 96 (1981). Subrogation rights, however, may also be delineated by contract, but contract rights will not be enforced when this works an injustice. *Id* at 97; *see also Shelter Mutual Ins. Co.* v. *Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992); *Hill* v. *State Farm Mutual Automobile Ins. Co.*, 765 P.2d 864 (Utah 1988).

Conflicts occur where the injured party's carrier covers for a specific risk such as property damage and pays a claim *in full* on that risk. The carrier's policy includes a subrogation clause in the

contract relative to all payments recovered by the insured. In the event that the injured party receives benefits from the tortfeasor's carrier for the same risk compensated, that is, property damage for which the insured has been fully compensated, subrogation should be allowed. However, if the contract between the injured party and the carrier provides that the carrier is subrogated to any and all other benefits received by the injured party, including benefits for risks not covered by the injured party's carrier, I question whether that carrier should be subrogated to those benefits. For example, a carrier paying the injured party for property damage should not be subrogated to benefits paid by the tortfeasor's liability carrier for bodily injury, regardless of the subrogation language in the property carrier's policy. To allow subrogation in that event would, in my judgment, be contrary to public policy.

Absent clear evidence of double recovery for the same risk, the injured party has a right to be made whole by insurance benefits received from other sources including benefits received from the tortfeasor's carrier.

In the case before us, the insured was made whole by Great American for physical damage to the truck. The facts, however, are not clear that double recovery for the same risk has occurred in the sense that it is impossible to discern from the record whether the tortfeasor's carrier, Farmers, paid $10,000 for physical property damage under its policy, as did Great American, or whether the benefits paid embraced other elements of damage arising out of the property damage such as lost income. Great American should not be subrogated to benefits paid to compensate for some other risk than that covered by Great American for the public policy reasons already addressed. However, had it been clear that Farmers was paying *solely* for property damage, causing a duplication of benefits for this risk, subrogation rights in Great American would prevail.

Because it is unclear that double recovery for property damage has occurred, I agree with the majority opinion and would reverse the judgment.