269 So.2d 490 (1972)
Frank GALMICHE, Administrator of the Estate of Linda Galmiche
v.
John R. SMITH, and Transportation Vehicles, Inc.
No. 4976.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1972.
Rehearing Denied November 21, 1972.
Writ Refused December 21, 1972.
*491 Bryan, Caraway & Schaefer, New Orleans (E. Gordon Schaefer, Jr., New Orleans) for defendant-appellee.
Juan A. Velasco, New Orleans, for plaintiff-appellant.
Brierre & Malone, New Orleans (Eugene D. Brierre, New Orleans), for defendant-appellant.
Before REDMANN, LEMMON and BAILES, JJ.
LEMMON, Judge.
Frank Galmiche, characterizing himself as administrator of the estate of his daughter, Linda Galmiche, sued to recover damages resulting from accidental injuries sustained by her while riding as a passenger in an automobile driven by Howard Smith, the 20 year old son of John R. Smith. The car was owned by Transportation Vehicles, Inc. (T.V.I.) and leased to Revlon, Inc., John R. Smith's employer.
John R. Smith, Revlon and T.V.I. were named as defendants, as well as Beneficial Fire and Casualty Insurance Company, T. V.I.'s liability insurer, and Allstate Insurance Company, the insurer of Smith's family automobile. Linda subsequently attained the age of majority and was substituted as a party plaintiff.
After a trial on the merits, the district court rendered a judgment in favor of plaintiffs and against Smith, Beneficial and Allstate, and dismissed plaintiffs' claim against T.V.I. and Revlon. In a judgment following an application for a new trial, Allstate was not cast, presumably on the basis that it was an excess insurer and the *492 amount of the judgment did not exceed the limits of Beneficial's liability.
Beneficial and Allstate appealed, seeking a reversal of the judgment, and Linda Galmiche also appealed, primarily seeking an increase in the award.
Howard Smith and Linda Glamiche had gone to a restaurant on Lake Pontchartrain, where they admittedly had two or three exotic drinks. After they left the restaurant and were returning home, Howard lost control of the vehicle, which left the road and struck a telephone pole.
Linda testified that Howard fell asleep. He denied this and stated that he simply tried to avoid striking a dog in the road. The trial judge accepted Linda's version, and we find no manifest error in the conclusion that Howard was thus negligent. John R. Smith is responsible for the damage occasioned by his minor son, who was residing with him. C.C. art. 2318.
Defendants primarily contend Linda assumed the risk by consenting to ride with Howard when she knew or should have known that he had been drinking excessively and was in a fatigued condition. They further argue she assumed the risk by failing to protest when he drove at an excessive speed.
Howard did not recall his rate of speed and denied being intoxicated. Linda stated that, if the speed was excessive, she did not realize it. She and the investigating officer both verified that Howard did not act as if he were intoxicated. As to the fatigue, Linda simply testified Howard mentioned feeling sleepy before the accident occurred.
We agree with the conclusion of the trial judge that defendants failed to prove the facts necessary to establish that Linda Galmiche knew or should have known she was endangering herself by consenting to ride with Howard Smith. A passenger is not required to test the condition of the driver prior to entering a vehicle or to monitor the driving while in progress, but simply to make reasonable observations and to take reasonable actions based on these observations. Linda was under a duty to decline to ride only if Howard was so obviously intoxicated or fatigued that it was patently unsafe to ride with him, or to protest if he was driving at a manifestly excessive and dangerous rate of speed. Such circumstances were not proved by the evidence in this case, and the defense of assumption of risk was properly rejected.

INSURANCE POLICY COVERAGE
Beneficial admitted its policy provided coverage for this vehicle under certain circumstances, but argues that, according to the terms of the policy, the vehicle was not covered under the facts of this case.
Insuring Agreement III of the original policy had been amended prior to the accident, the following portion of the endorsement being pertinent to this case:
"1. Insuring Agreement III is amended to read as follows:
"With respect to the insurance afforded by the policy for Bodily Injury Liability and Property Damage Liability, the unqualified word `Insured' includes the Named Insured and except where specifically stated to the contrary, also included 1) Lessees, 2) Additional Insureds and 3) Provided the actual use of the automobile and any person or organization legally responsible for the use thereof."[1]
*493 Beneficial contends that in order for Howard Smith or John R. Smith to qualify as an insured under the policy, they must qualify either as a named insured, a lessee or an additional insured. It is undisputed that T.V.I. was the named insured and Revlon in this case was the lessee. Beneficial therefore argues there is no coverage, since neither Howard Smith nor John R. Smith was an additional insured.
We agree that neither qualified as an additional insured. Section 2.b. of the amendment of the Insuring Agreement III specifically provided:
"2. * * *
"b. The term `Additional Insured' means any person or organization to whom or to which a valid certificate of insurance has been issued by the company evidencing that the insurance afforded by this policy applies for the benefit of such person or organization, provided the insurance afforded to any such Additional Insured shall apply only to the liability of such Additional Insured arising out of the use of an automobile to which this policy applies by or on behalf of a Lessee." (Emphasis supplied)
There was no evidence that any certificate of insurance was issued to Howard Smith or John R. Smith. Furthermore, Beneficial restricted its coverage of an additional insured to liability for use by or on behalf of the lessee, and the use in this case was not by or on behalf of Revlon.
However, we do not agree that Insuring Agreement III afforded coverage only to named insureds, lessees, and additional insureds. The additional category, though absurdly defined in the erroneous amendment, was obviously intended to provide coverage to someone. Furthermore, the very next sentence of the amendment, providing that coverage "afforded with respect to any person or organization other than the Named Insured, a Lessee, or an Additional Insured" is excess insurance, makes it clear that Beneficial intended to provide excess coverage to an additional category of persons or organizations.
Considering the language of the amendment and of the original policy, we would perhaps be willing to construe the obvious minimum intent of the parties to include as an insured any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use is by the named insured or its lessee or with the permission of either. Perhaps the parties intended even broader coverage, such as, for example, to include as an insured any person while using the automobile with the permission of the person to whom the lessee assigned the vehicle. However, since the burden of proving coverage is on the plaintiffs, we decline to construe the policy any broader than the obvious minimum intention.
Using this construction of the omnibus clause, we now proceed to determine whether Howard Smith or John R. Smith qualified as an insured under that clause.
Since John R. Smith himself was merely a permittee, the question arises as to whether he had authority to grant further permission to another person.
There was considerable testimony in the trial court and argument in this court as to whether Howard Smith used the car on the night of the accident with the express or implied permission of his father. However, that determination of whether John R. Smith in fact gave permission is unimportant, unless there is evidence that his permission would qualify his son as an omnibus insured under the policy.
The evidence persuades us that Revlon allowed John R. Smith to use the leased automobile for other than business purposes *494 and further allowed him to permit other members of his family to drive it. However, there is further evidence that Revlon had issued a directive to its employees, instructing them not to allow persons under 21 years of age to operate the leased vehicles.
John R. Smith testified that he had received this directive. Howard Smith testified that his father had told him of the directive and that "I knew that I shouldn't have been driving it unless I was 21 but I didn't realize how serious it was." However, no copy of the directive was produced.
The trial court ruled the proof was insufficient that Revlon had issued such a directive. In this respect we believe that the trial judge erred, since the existence of the directive was verified by both Smiths, and there was no contradictory evidence. Furthermore, if we accept the testimony of the Smiths that Revlon permitted other family members to drive the car, we have no reason to reject their testimony that this permission was restricted to persons over the age of 21.
The permission granted by Revlon to John R. Smith was therefore conditioned upon the restriction in the directive. Where the initial permittee is restricted from granting permission to certain other persons to use the automobile, the restriction is valid, even if made separate and apart from the insurance policy. Normand v. Hertz Corp., 254 La. 1075, 229 So.2d 104 (1969).
In this case Revlon's directive restricted John R. Smith from granting permission to use the vehicle to a certain class of persons. Since Howard Smith fell within this restricted class (persons under 21), his use of the car was not covered by the policy. We therefore conclude that Beneficial's policy did not provide coverage under the facts of this case.
Allstate also argued that its policy did not afford coverage. Howard Smith was an insured under Allstate's policy as:
"4. Any relative with respect to a non-owned private passenger automobile or trailer not regularly furnished for use of such relative;" (Emphasis supplied)
However, Allstate resists coverage under the following exclusion:
"3. a non-owned automobile while used (a) in an automobile business by the insured, or (b) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith;" (Emphasis supplied)
Allstate argues that its insured, John R. Smith, used this automobile in his business or occupation. However, the cited provision excludes coverage of the non-owned automobile only while it is actually being used in the business of the insured and not while it is being used for other purposes. This exclusion is not applicable under the facts of this case.
Allstate's further argument that Howard Smith did not have permission to use the car is also of no avail, since he qualified as an insured under another policy provision. Furthermore, the permission clause referred only to the owned automobile.

QUANTUM
After the September 1, 1966 accident Linda Galmiche was taken to Touro Infirmary, where she remained hospitalized for four days. She was treated during the hospitalization and for several months thereafter by a general surgeon who regularly treated her family.
The doctor diagnosed a closed fracture of the left public bone, a possible fracture of the sacrum, acute low back strain and a vertical laceration of the right forehead and temple down the skull. He sutured her laceration and treated the back injury and fractures conservatively.
*495 Linda testified that she remained in bed at home for about one month and used a heating pad daily for the first two months. Formerly a secretary, she attempted to work as a telephone operator approximately 2½ months after the accident, but could not perform her duties because of back pain. She eventually resumed work as a secretary more than five months after the accident, but continued to suffer back discomfort.
Linda continued to take prescribed medication and to regularly use a heating pad for about one year after the accident, about which time she stated the residual symptoms began to diminish. During that time she consulted two orthopedic specialists, who found residual symptoms of pain and tenderness in the area of the distal sacrum and the coccyx. While they agreed the long periods of sitting in her work as a secretary aggravated the condition and prolonged her period of recovery, neither believed that any permanent disability would result. She suffered back pain during her pregnancy for a child born four years after the accident, but at the time of trial she experienced only occasional discomfort.
Medical and hospital expenses in the amount of $510.35 were stipulated.
The scar from the facial laceration was described by a plastic surgeon as a straight scar, above the right eyebrow, about five centimeters in length, which appears white in comparison to the adjacent skin. He found no loss of function of the muscles of the forehead. He believed the scar was permanent and that it was questionable whether the appearance could be improved by surgery.
The trial judge found a period of pain and suffering from the fractures and back strain of one year, followed by a gradual diminishing of the symptoms. He awarded the sum of $7,500.00 for this pain and suffering, in addition to the stipulated medical charges. He also awarded $1,500.00 for disfigurement caused by the permanent scar.
These awards were within the "much discretion" vested in the trial judge by C.C. art. 1934(3). However, the trial judge erred in denying any recovery for loss of wages. Miss Galmiche was earning $300.00 a month at the time of her injury and claimed loss of wages in the amount of $600.00. All of the medical and lay evidence corroborates the fact she was unable to work for at least two months following the accident, and she should recover this item.
The original judgment in favor of Frank Galmiche was against Beneficial and John R. Smith. Galmiche did not appeal from that portion of the judgment which dismissed Allstate. We are now reversing the judgment against Beneficial, but cannot award Galmiche judgment against Allstate for the medical expenses he incurred individually in the absence of an appeal from the dismissal. However, his judgment against Smith, Allstate's insured who did not appeal, is now a definitive judgment.
Linda Galmiche did perfect an appeal. We amend her judgment against Smith to include $600.00 for loss of wages and award her judgment against Allstate in the full amount, as amended.
Accordingly, the judgment of the trial court is reversed in part and amended and affirmed in part. There is now judgment in favor of Beneficial Fire and Casualty Insurance Company and against Frank Galmiche and Linda Galmiche, dismissing their suit as to that defendant. There is judgment further in favor of Linda Galmiche, now wife of Ronald Butterworth, and against John R. Smith and Allstate Insurance Company in the amended amount of $9,600.00, together with legal interest thereon from the date of judicial demand until paid. All costs are assessed against Allstate Insurance Company.
Reversed in part, amended and affirmed in part.
NOTES
[1] This amendment contained an apparent typographical error of omission in the wording following the number 3. The original policy provided that the unqualified word "Insured" included:

"* * * the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."