## MFA MUTUAL INSURANCE COMPANY *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *v.* HOME INSURANCE COMPANY

CA 79-254                                                           595 S.W. 2d 706
Court of Appeals of Arkansas
Opinion delivered March 5, 1980
Released for publication March 26, 1980

*Wright, Lindsey & Jennings,* for appellant.

*Laser, Sharp, Haley, Young & Huckabay, P.A.,* for appellee-cross-appellant.

JAMES H. PILKINTON, Judge. On September 6, 1972, in White County, Arkansas, a motor vehicle owned by W. J. Davis and operated by Charnel E. Simmons was involved in a collision with a motor vehicle owned by Julian Hays and occupied by his wife, Hazel. It is conceded that the accident was caused by the negligence of Mr. Simmons and resulted in damages to Mr. and Mrs. Hays.

Simmons had orally contracted to make some body repairs on the Davis vehicle. On the day of the accident Simmons drove to Davis' residence, left his own vehicle there, and with Davis' permission took possession of the Davis vehicle. While in the process of driving the Davis vehicle to his own home where he planned to make the repairs, Simmons was involved in the collision in question.

The Davis vehicle was described in a policy of insurance issued to Davis by the Home Insurance Company. This company denied that it had applicable liability coverage due to an express exclusion in the Davis policy. This exclusion read:

> ·EXCLUSIONS. This policy does not apply: Under coverage A and B, (d) to an owned automobile while maintained or used by any person while such person is employed or otherwise engaged in the automobile business . . .: DESIGNATIONS. Under Part 1: "automobile business" means the business or occupation or selling, repairing, servicing, storing or parking automobiles;

Simmons himself had an automobile policy with MFA Mutual Insurance Company covering himself while operating non-owned vehicles with the permission of the owner. However, MFA likewise denied that it afforded liability to Simmons because of an express exclusion stated as follows:

> (7) EXCLUSIONS — Coverages A and B do not apply to:
> (h) A non-owned automobile while used (1) In the automobile business by the named insured. DEFINITION . . .
> (2) "Automobile Business" means the business or occupation of selling, repairing, servicing, storing or parking automobiles.:

While both policies defined "automobile business" in the same manner, the other wording of the two exclusion clauses is different as will be discussed later.

Because of the denial of coverage by both the Home and MFA, Mr. and Mrs. Hays filed suit against their own insurance carrier, State Farm Mutual Automobile Insurance Company, under the uninsured motorists provision of that policy. Davis and Simmons individually were also made parties defendants. State Farm, in turn, filed third party complaints against Home and MFA, alleging that the denials of coverage by the two carriers were erroneous.

Subsequently the three carriers agreed that State Farm would settle with Mr. and Mrs. Hays and then resolve the contentions of the carriers among themselves later. Settlement with Mr. and Mrs. Hays was thus effected for $6,780.28; and State Farm filed an amended third party complaint against Home and MFA companies (and also against Davis and Simmons) seeking reimbursement. A jury was waived and this matter was submitted to the trial court on the basis of a stipulation of the three carriers, the deposition of Simmons, and memorandum briefs. The trial court held that Home Insurance Company had properly denied coverage, but that MFA had not. From a judgment ordering MFA to reimburse State Farm, MFA brings this appeal. State Farm

had filed a cross-appeal from the judgment exonerating Home.

The trial court correctly held that the MFA policy did not exclude coverage under the facts of this case. While Arkansas courts have apparently not passed on this exact question, the legal issue involved (and the precise exclusionary language contained in the MFA policy of insurance) have been litigated in several other jurisdictions. An examination of the results reached in those cases shows that the trial court in the case at bar followed the overwhelming weight of judicial authority in holding that the MFA's exclusionary language does not cover a fact situation where a car is being taken to a garage for repairs, or returned to its owners after repairs have been completed. See *Continental National American Group* v. *Allied Mutual Insurance Company,* 95 Idaho 251, 506 P. 2d 748 (1973).

In *Continental* the court concluded that there were three general types of exclusionary language employed by insurance companies under the so-called "automobile business" exclusion. The first type of exclusion is that contained in the policy of MFA Insurance Company in the case before us. This type of exclusion excludes coverage to vehicles being "used in the automobile business." The focus of this exclusion is therefore upon the nature of the use of the automobile at the time of the accident rather than the employment capacity of the person so operating the vehicle. A second type of exclusion commonly used is similar to that employed in the Home Insurance Company's policy in the case at bar. This exclusionary language denies coverage to any person "while such person is employed or otherwise engaged in the automobile business." The focus of this exclusion, unlike the MFA exclusion, is therefore the employment status of the person claiming coverage at the time of the accident rather than the *use* to which the automobile is being put at that time. The third type of exclusion, not involved in the case before us, is much broader than the other two, and places focus not only upon the employment of the person driving the vehicle at the time of loss, but also the use to which the automobile is being put at the time of the accident.

A brief discussion of those cases which have refused to apply MFA's exclusionary language in identical fact situations readily illustrates the reasoning of those courts. For example, in the case of *McCree* v. *Jennings,* 55 Wash. 2d 725, 349 P. 2d 1071 (1960), the insured vehicle was taken to the premises of one Richard Miller whose primary occupation was that of barber, but who also did some part-time mechanical work. Mr. Miller had agreed to install a master cylinder in the insured vehicle. An accident occurred when the vehicle was being returned to the owner following the completion of repairs. The insurance company denied coverage to its insured under its policy exclusions (identical to MFA's) which applied to:

> A non-owned automobile while used in the automobile business by the insured.

In rejecting this contention, the Supreme Court of Washington stated what appears to be the well-settled interpretation of the "used in the automobile business" exclusion:

> It would appear evident, therefore, that an automobile 'used in the automobile business,' would be one which was employed for some purpose in connection with that business. For example, a tow truck, an automobile used for demonstration purposes or a vehicle used for securing or delivering equipment and supplies would be 'used in the business,' but the Jennings automobile was not turned over to Miller to be used by him for his business purposes. It was simply brought to him to be repaired.

In the case of *LeFelt* v. *Nasarow,* 71 N.J. Super. 538, 177 A. 2d 315 (1962), the Court likewise specifically held the "used in the automobile business" exclusion not applicable to a fact situation similar to the case at bar. The Court stated:

> For the foregoing reasons, it is my opinion that a customer's automobile in the custody or possession of an automobile repairman, who drives it for the purpose for testing the repairs which he has made is not being used

in the automobile business within the meaning of the exclusion clauses in defendant's policy.

In the case of *Goforth* v. *Allstate Insurance Company,* 327 F. 2d 637 (4th Cir. 1964), it was stated:

We agree with the district court that a private automobile being driven from the place of business of the owner by a garage-keeper to his garage for the purpose of effectuating repairs requested by the owner was not 'used in the automobile business' within the meaning of an exclusion clause in the owner's liability insurance policy.

In the case of *Travelers' Indemnity Company* v. *Royal Indemnity Company,* 275 Cal. App. 2d 554, 80 Cal. Reporter 197 (1969), the Court refused to apply this precise exclusion to an accident which occurred while an employee was road-testing a privately-owned car after repairs had been performed on it. The Court noted that under the type of exclusionary language involved in the case at bar, the emphasis was not placed upon the duties of the employee at the time of the accident, but rather the use to which the car is being put at the time of the accident and that, as such, the car was not being "used in the automobile business" but simply being returned to its owner.

We recognize that a minority of courts in other states have reached the opposite conclusion; however, we find the majority rule to be the most desirable and in harmony with the rules of construction applicable to insurance contracts generally.

If it can be said that the MFA exclusion provision is ambiguous, then the ambiguity must be construed against the insurance company preparing the contract, and the policy will be construed so as to provide coverage unless it is patently unreasonable to do so. See *Travelers Protective Association* v. *Sherry,* 192 Ark. 753 at 757, 94 S.W. 2d 713 (1936); *St. Paul Fire and Marine Ins. Co.* v. *Kell,* 231 Ark. 193 at 195, 328 S.W. 2d 510 (1959); *Service Casualty of New York* v. *Vasseay,* 245 Ark. 63, 431 S.W. 2d 243 (1968).

MFA could have, without extraordinary effort on its part, framed its exclusion in such language as that contained in the Home policy, for example, if it had intended to exclude the activities of repairmmen in picking up or delivering non-owned vehicles to their owners.

It is finally argued that MFA did not intend to contract for coverage under the situation in the case at bar. We find no merit in that contention. If that is true, then MFA should have stated so in clear and unequivocal terms in its policy.

We hold that the trial court was correct in the judgment rendered as to the MFA policy, and also the Home policy of insurance.

Affirmed on direct and cross-appeal.