SOUTHERN TITLE INSURANCE COMPANY
*v.* Paul OLLER, Jr. and Pearline OLLER

80-33                                    595 S.W. 2d 681
Supreme Court of Arkansas
Opinion delivered March 24, 1980

*Graves & Graves,* by: *John Robert Graves* and *William Randall Wright,* for appellant.

*Tackett, Moore, Dowd & Harrelson,* by: *Gene Harrelson,* for appellees.

FRANK HOLT, Justice. In 1975 appellees purchased approximately 400 acres of property in Hempstead County. At the same time, they purchased title insurance from the appellant which insured against any loss or damage they might sustain by reason of certain enumerated defects or unmarketability of their fee simple title to the property. However, the policy contained the following exclusionary clause: "subject to mineral interest leased or reserved." There was in existence at the time a recorded 1909 deed to the property which reserved to the grantors one-half of the "chalk deposits" on the land with the right "to enter upon said land for the purpose of mining and removing said chalk." Appellant's primary contention on appeal is that the court, sitting without a jury, erred in concluding that chalk, a form of limestone, is not a mineral, and therefore not excluded from coverage under the title insurance policy. The crucial question, one of first impression in Arkansas, is whether chalk or limestone is classified as a mineral. If so, the "chalk

deposits" retained in the deed fall within the purview of the exclusionary clause, and the appellant is not liable under the policy. If not, the appellant is liable on the policy, and the judgment of the lower court must be affirmed in this respect.

For purposes of clarity, it is undisputed that chalk is a form of limestone.

It appears there is no Arkansas case on the subject as to whether limestone is a mineral. Therefore, we look to other jurisdictions. Courts there have followed the general rule that a reservation of mineral rights in a deed does not ordinarily include limestone. *Holland* v. *Dolese Co.,* 540 P. 2d 549 (Okla. 1975); *Atwood* v. *Rodman,* 355 S.W. 2d 206 (Tex. Civ. App. 1962); *Eldridge* v. *Edmondson,* 252 S.W. 2d 605 (Tex. Civ. App. 1952); *Heinatz* v. *Allen,* 217 S.W. 2d 994 (Tex. 1949); 265 Ky. 495; *Rudd* v. *Hayden,* 97 S.W. 2d 35 (Ky. 1936); and 54 Am. Jur. 2d, Mines and Minerals, §§ 8 and 10.

In interpreting the scope of a mineral rights reservation in a deed or an oil and gas lease which includes the phrase "and other mineral substances" or a grant of the "surface estate," a major factor to be considered is whether the removal of the substance is accomplished by open pit mining, or any other process, which effectively destroys the surface of the land. Other relevant factors are local custom and usage and intention of the parties. *Carson* v. *Missouri Pacific Rd. Co., Thompson, Trustee,* 212 Ark. 963, 209 S.W. 2d 97 (1948); *Vang* v. *Mount,* 220 N.W. 2d 498 (Minn. 1974); *Holland* v. *Dolese Co., supra; Acker* v. *Guinn,* 464 S.W. 2d 348 (Tex. 1971); *Reed* v. *Wylie,* 554 S.W. 2d 169 (Tex. 1977); *Blythe* v. *Hines,* 577 P. 2d 1268 (Okla. 1978); 211 Kan. 724; and *Wulf* v. *Schultz,* 508 P. 2d 896 (Kan. 1973). In *Newell, Inc.* v. *Randall,* 373 So. 2d 1068 (Ala. 1979), it was said: "Although there is no precise definition of the term 'mineral,' it necessarily implies a substance rare and exceptional in character possessing special value—and something other than the soil itself." The rationale expressed in some of these cases is that, although limestone is of commercial value, it is not rare or exceptional in character. Further, being a part of or near the top soil as here, when quarried, the surface soil is destroyed for agricultural or grazing purposes. It would therefore be unreasonable to construe the reservation to include the right to destroy the surface of the property.

It is well settled in Arkansas with respect to the scope of a mineral reservation in a deed, that it is a fact question as to whether a certain substance is generally characterized or considered as a mineral. *Thomas* v. *Markham & Brown, Inc.,* 353 F. Supp. 498 (E.D. Ark. 1973). See also *Missouri Pacific Rd. Co., Thompson, Trustee* v. *Strohacker,* 202 Ark. 645, 152 S.W. 2d 557 (1941); and *Carson* v. *Missouri Pacific Rd. Co., Thompson, Trustee,* 212 Ark. 963, 209 S.W. 2d 97 (1948). In *Thomas* it was observed that legal scriveners and laymen, who buy or sell land and grant or reserve a mineral right, don't usually think in technical terms as defined by geologists, engineers or other experts. Also the fact that it is well known that a valuable substance is in or on the ground does not necessarily make the substance a "mineral" within a mineral grant or reservation. In *Strohacker* we held that a reservation of coal and mineral deposits in an 1892 deed was not sufficient to cover oil and gas because they were not understood to be minerals at that time. In *Carson* we held that bauxite was not included in a reservation of mineral rights in an 1892 deed because it was not generally known as such or within the contemplation of the parties. We also held that "minerals" or "mineral rights" did not include bauxite because of the inconsistency between the use of the land surface and the exploitation of the bauxite deposit.

Since the case at bar was tried before the standard of review was altered by our new Rules of Civil Procedure, Rule 52, we affirm if there is any substantial evidence to support the findings of the court. *Taylor* v. *Johnnie Richardson, D/B/A Richardson Construction Co.,* 266 Ark. 447, 585 S.W. 2d 934 (1979). Here we view the evidence, even though contradicted, and all reasonable inferences deducible therefrom in the light most favorable to the appellee; further, exclusionary clauses in insurance policies are strictly interpreted, and all reasonable doubts are resolved in favor of the insured. *State Farm Mutual Automobile Insurance Co.* v. *Traylor,* 263 Ark. 92, 562 S.W. 2d 595 (1978); *Security Ins. Co.* v. *Owen,* 252 Ark. 720, 480 S.W. 2d 558 (1972); and *First Pyramid Life Ins. Co.* v. *Thornton,* 250 Ark. 727, 467 S.W. 2d 381 (1971).

Here appellees purchased the property and operated a hog farm. Subsequently limestone was commercially mined for a short time. The appellant argues that limestone is valuable and commercially profitable, and therefore the concept of profitability or value should be the controlling factor as to whether limestone is a mineral when there is a mineral exclusion in a policy of title insurance. We cannot agree. That is only one factor. It appears that limestone mining is commercially feasible and profitable in the local area. The limestone is about 50' in depth. The production would be about 3,000 tons per acre foot and $3.50 per ton appeared to be a reasonable "going rate." As to the proper characterization or definition of limestone, the evidence was conflicting. Two expert witnesses testified for appellant that it was a mineral, and two state geological publications classified it as a mineral. The geologist for the State Geological Commission testified, however, that "chalk is a rock," and "chalk does not fit the classic defintion for a mineral nor does limestone . . ." Limestone is generally mined by going upon the property and using the open pit method, a surface excavation, which destroys the surface of the land. This is true here. Although there is evidence of commercial mining in Arkansas in 1909 and mining was commercially profitable in the local area in 1975, there is no evidence that at any time chalk or limestone was generally known or regarded in the area as a mineral. At the time this case was tried in 1978, the appellees could not lease nor sell their property because of the title defect. When appellant issued its title insurance policy in 1975, it chose to restrict its coverage for "mineral leased or reserved" although there was a recorded deed reserving to the grantors a one-half interest in the "chalk deposits" (limestone).

Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellees, as we must do on appeal, we find that there is ample substantial evidence to support the court's finding that the limestone on the appellees' land is not a mineral "within the exclusion in the title insurance policy." A predominate, if not controlling factor, is that the mining of limestone destroys the surface of the property for farming or any legitimate purpose, and therefore the exclusion claimed by appellant is unreasonable and not within the intent of the parties.

The second issue raised on appeal is that the trial court's allowance of attorney's fees to appellees' attorney is excessive. Appellant cites *Equitable Life Assurance Society* v. *Rummell,* 257 Ark. 90, 514 S.W. 2d 224 (1974) which enumerated the factors to be considered in determining the reasonableness of attorney's fees. Here the court awarded judgment for the face amount of the policy, $68,000, a 12% statutory penalty in the amount of $8,160, plus a $7,500 attorney's fee. Appellant argues that the trial judge based his decision on the pleadings, actual trial and skill of the attorney, and therefore these factors alone are insufficient bases for the award. Appellees respond that the investigation of the case required considerable travel, the interviewing of witnesses, the securing of expert testimony, a search of court records, and the necessary expertise to properly cross-examine appellant's witness. Further, a novel and difficult question of first impression was presented, and $7,500 is less than 10% of the total amount recovered for the appellees. The appellees do not ask for any additional fee for legal services on appeal. We recognized in *Equitable Life Assurance* v. *Rummell, supra,* that there is no fixed formula or policy for determining a reasonable attorney's fee other than there is a broad discretion vested in the courts which must not be abused. In the circumstances, we hold the $7,500 fee reasonable.

Affirmed.