**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Stephen BROCK, Jimmy Decker, General Oil Company, Inc., Lowell McKinney and William Doyle Hanley, Defendants.**

**No. B–C–85–108.**

United States District Court,
E.D. Arkansas, N.D.

Aug. 28, 1987.

Mike Huckabay, Little Rock, Ark., for plaintiff.

John C. Gregg, Batesville, Ark., for General Oil Co.

Jimmy Decker, pro se.

## MEMORANDUM AND ORDER

HENRY WOODS, District Judge.

Pending now are cross-motions for summary judgment by the plaintiff, Allstate Insurance Company (Allstate), and the defendant, General Oil Company (General Oil). For the reasons that follow, the motion of Allstate is denied and summary judgment is granted in favor of General Oil.

---

1. General Oil has brought suit against Brock and others for damages resulting from the oc-

### I. Factual Background

On or about May 4, 1985, a collision occurred between a vehicle operated by defendant Stephen Brock and a vehicle owned and operated by defendant Lowell McKenney. As a result of the collision gasoline pumps owned by General Oil were damaged.[1] The vehicle operated by Brock had recently been sold or was being sold to defendant Doyle Hanley by defendant Jimmy Decker, d/b/a "Jim's Used Cars." Brock had delivered the vehicle to Hanley at Decker's request but was returning the car to Decker to have a defective door repaired when the collision occurred. It is undisputed that Brock was not employed by Decker, but he did spend a good deal of his free time at Decker's shop and, occasionally, assisted Decker. Brock was not paid for his time or services.

It is further undisputed that at the time of the occurrence there was in full force and effect an automobile liability policy issued to Brock's father on which Brock was an additional insured. Allstate filed its complaint in this action seeking a declaration that the policy affords no liability insurance with respect to the occurrence. Its claim is based on two provisions of the policy which exclude coverage for (1) "automobile business operations" and, (2) for non-owned autos "while being used in any business or occupation of the insured," respectively. In this diversity case the law of Arkansas is controlling. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### II. The Automobile Business Exclusion

The "automobile business" exclusion provides that coverage under the policy is excluded for

Automobile business operations such as repairing, servicing, testing, washing, parking, storing or selling of autos[.]

Allstate asks the court to rule, as a matter of law, that Brock was the agent of Decker and, therefore, his operation of the vehicle was necessarily in the course of Decker's business. While some courts have appar-

---

currence in the Circuit Court of Independence County, Arkansas, No. CIV 85–286.

ently accepted the theory advocated by Allstate,[2] which is based upon the employment capacity or agency relationship of the insured, it has not gained favor in Arkansas. *See MFA Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company*, 268 Ark. 746, 595 S.W.2d 706 (App.1980).

In *MFA, supra*, the court held that the "automobile business" exclusion did not apply to a fact situation where a car is being taken to a garage for repairs, or being returned to its owner after repairs have been completed. Rather, the exclusion applies only when the vehicle is employed for use with that [automobile] business such as a tow truck, a demonstrator or a vehicle used for delivering equipment or supplies used in the business. *Id.* 595 S.W.2d at 708, *citing McCree v. Jenning*, 55 Wash.2d 725, 349 P.2d 1071 (1960). The court reasoned that the so-called automobile business exclusion is concerned with the nature of the use of the vehicle at the time of the occurrence—not with the employment capacity of the person operating the vehicle.

Here, Brock was either delivering the vehicle to Hanley or returning it to Decker for repairs at the time of the occurrence. This use of the vehicle, being only collateral and incidental to Decker's sales and service business, was clearly not "in the automobile business" as that phrase was construed in *MFA*, nor was it an "automobile business operation" as defined in Brock's policy.

In Arkansas, words of exception or exclusion in an insurance policy must be construed strictly against the insurer and in favor of the insured. *E.g., Aetna Casualty & Surety Company v. Stover*, 327 F.2d 288, 7 A.L.R.3d 655 (8th Cir.1964) (applying Arkansas law). All reasonable doubts are to be resolved in favor of the insured, *Southern Title Insurance Company v. Oller*, 268 Ark. 300, 595 S.W.2d 681 (1980), and if a reasonable construction may be given to a contract which would justify recovery it is the duty of the court to do so. *Drummond Citizens Insurance Company v. Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979). Significantly, it was noted in *MFA* that if MFA had intended to exclude pickup and delivery of vehicles from its policy it could have, without extraordinary effort, framed its exclusion in such language. The language which was used by MFA in that case is nearly identical to that employed by Allstate here.[3]

Therefore, in the absence of any express indication to the contrary, the court is unable to conclude that pickup of vehicles to be repaired and delivery of vehicles sold or repaired incident to an auto sales and service business was intended to fall within the automobile business exclusion as defined.

### III. The Business Occupation Exclusion

Allstate's second contention is that it is not liable on the policy because coverage is excluded for

a non-owned auto while being used in any business or occupation of the insured.

It is undisputed that the vehicle operated by Brock was a "non-owned" vehicle within the meaning of the exclusion. The only question, therefore, is whether Brock was operating the vehicle in his business or occupation. The court finds that he was not.

The "business or occupation" exclusion has been construed to be applicable to a

---

**2.** *See generally* 12A, *Couch on Insurance* 2d (Rev.Ed.) § 45:994 and cases cited therein.

**3.** In *MFA* the policies of two insurance companies were at issue. Both defined "automobile business" in the same manner but the exclusion in the Home Insurance policy was made applicable to an "automobile while maintained or used by any person *while such person is employed or otherwise engaged in* the automobile business." The *MFA* exclusion, however, was limited to an "automobile used in the automobile business." The court distinguished the two clauses and concluded that the focus of the Home policy is on the employment status of the insured while the MFA policy's focus is on the nature of the use of the vehicle. The court went on to hold that the Home exclusion applied and the MFA exclusion did not apply to an auto being driven to or from a repair garage. The language used in the case at bar more closely resembles the MFA policy than the Home policy and will be interpreted accordingly.

situation where the insured is gainfully employed or operating a business and where he is going about the duties of his employment or business. *Lee v. Allstate Insurance Company*, 274 So.2d 433, 437 (La. App.1973).[4] The phrase has also been defined to mean "an undertaking engaged in with some regularity and for profit and income." *Pontico v. Roussel*, 380 So.2d 649, 651 (La.App.1980), *citing Helmich v. Northwestern Mutual Insurance Company*, 376 F.2d 420, 424 (7th Cir.1967); *Cherot v. United States Fidelity and Guaranty*, 264 F.2d 767, 769, 71 A.L.R.2d 959 (10th Cir.1959). The record in this case leaves no room for doubt that Brock was neither gainfully employed nor engaged in an undertaking for profit and income.

In his deposition, attached as "Exhibit A" to the defendant's motion, Brock testified that he was an unemployed college student at the time of the accident (Tr. 3, 4, 5), and that his older brother Mark worked with Decker in his business fixing and reselling used cars. (Tr. 5). Brock would "hang around" the shop when his brother and Decker would let him and he would occasionally run errands for them—mostly to get food. (Tr. 6). He had been doing this for about two weeks prior to the accident. (Tr. 7).

Brock was not paid for his time or services. (Tr. 6, 8, 9, 12, 13, 15, 17). He testified he would help sand, wash, wax and vacuum cars to "pass time away until [he] could get a job." (Tr. 7, 9). Otherwise, he was not allowed to do anything "carwise." (Tr. 12). He was only "helping out" his brother and Decker and was delivering the vehicle in question as a favor to them. (Tr. 13, 14, 17, 20). He had never delivered a vehicle before. (Tr. 8). There is nothing in the record to rebut Brock's testimony.[5]

In light of these facts, and the rationale for the "business or occupation" exclusion, Allstate's argument that the exclusion is applicable must be rejected. This is not a case in which it can be said the responsibility for providing insurance coverage should rest with Brock's employer. *See Lee v. Allstate Insurance Company*, 274 So.2d 433, (La.App.1973).[6] Indeed, Brock had no employer. Moreover, a reasonable person contemplating the purchase of insurance would interpret the "business or occupation" exclusion to apply to regular driving as a part of employment. *Pontico v. Roussel*, 380 So.2d 649, 653 (La.App.1980). Brock's father could not reasonably have been expected to foresee that his son's one-time, unanticipated driving of Decker's vehicle would be without the coverage of his policy. *Id.*

Accordingly, the court finds that there are no issues of material fact in dispute and that the defendant, General Oil Company, Inc., is entitled to judgment as a matter

---

**4.** There is some authority that the exclusion applies regardless of whether the business or occupation is pursued for purposes other than pecuniary gain. The court finds these cases to be distinguishable from the one at bar and declines to extend their reasoning to the facts presented here. *See generally* Annotation, *Construction of provision excluding automobile used in insured's "business or occupation" from non-owned automobile coverage of automobile liability policy*, 85 A.L.R.2d 502, and cases cited therein.

**5.** This case had earlier been administratively stayed due to the pending bankruptcy petition of Jimmy Decker. General Oil moved to reopen the case as to all parties but Decker and, in response to that motion, Allstate replied that "Mr. Decker's testimony is essential [to determining whether Brock was Decker's agent] and cannot be obtained while the bankruptcy stay is pending." It should be noted, first, that the asserted purpose for Decker's testimony is irrel-

evant to the issue here and, second, that the automatic stay did not prevent Allstate from taking the evidentiary deposition of Decker as a non-party.

**6.** In *Lee* the court found the business or occupation exclusion applicable to a part-time employee. *Lee* is clearly distinguishable from the case at bar, however, in that Brock was not an employee—part-time or otherwise. *See also Taylor v. State Farm Mutual*, 171 So.2d 816 (La.App. 1965) (exclusion not applicable where employee paid no wage for travel time); *Buckeye Union Casualty Company v. Perry*, 296 F.Supp. 888, *aff'd*, 406 F.2d 1270 (4th Cir.1968) (exclusion not applicable to quasi-personal arrangement); *Allstate v. Zellars*, 462 S.W.2d 550 (Tex.1970) (exclusion not applicable to personal use of employer's vehicle by employee); *Galmiche v. Smith*, 269 So.2d 490 (La.App.1972) (exclusion not applicable to operation by employee's son of vehicle leased to employer).

of law declaring the exclusionary provisions of the policy at issue inapplicable to the occurrence of May 4, 1985.