274 So.2d 433 (1973)
James S. LEE
v.
ALLSTATE INSURANCE COMPANY et al.
No. 9239.
Court of Appeal of Louisiana, First Circuit.
February 28, 1973.
*434 Walker P. Macmurdo, Percy, Macmurdo, Gray & Eaton, Baton Rouge, for appellant.
David M. Ellison, Jr., Ellison, Gary & Fields, Baton Rouge, for Allstate Ins. Co.
Frank M. Coates, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, for Cumis Ins. Co.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge.
The question in this matter is whether one or more of three insurance companies is liable for the damages, stipulated to be $6,761, sustained by plaintiff, James S. Lee, in an automobile accident between plaintiff's truck and a 1963 Chevrolet driven by a minor, Mark E. Perry. The accident occurred on December 15, 1970, in Baton Rouge, Louisiana, and it was further stipulated that the sole cause of the accident was the negligence of Mark E. Perry. At the time of the accident, Mark E. Perry was working for T. G. and Y. Stores. The 1963 Chevrolet was owned by Morris E. McDowell and had been driven to work by Perry's co-worker, Richard McDowell, also a minor.
The father of Mark E. Perry, who is Wallace E. Perry, was the insured under a "Crusader" policy of Allstate Insurance Company. The father of Richard E. McDowell, who is Morris E. McDowell, was insured under an automobile liability policy by Cumis Insurance Company. T. G. and Y. Stores was insured for liability by American and Foreign Insurance Company.
Defendant, Allstate Insurance Company, contended that its policy afforded no coverage because of a clause which excludes a non-owned automobile used in the occupation of the insured. The lower court found that Mark Perry's occupation within the meaning of this exclusion was that of a T. G. & Y. employee, even though he was also a student. Allstate was found therefore to have no coverage.
Defendant, Cumis Insurance Company, McDowell's insurer, contended that its policy afforded no coverage because Richard McDowell did not have permission to allow anyone else the use of the 1963 Chevrolet. The lower court held that Richard McDowell's use of the 1963 Chevrolet was not such broad, free and unrestricted use as would place him in the position of the named insured. Thus, the general rule that a minor child of the named insured cannot violate instructions of the named insured in permitting others to use the vehicle so as to place a second user in the position of an omnibus insured was applied. Cumis Insurance Company was found therefore to have no coverage.
The lower court found that Mark E. Perry was at the time of the accident the agent, servant and employee of the defendant, T. G. & Y., Inc., and that the liability of T. G. & Y., Inc. was insured by American and Foreign's policy.
Judgment was rendered in favor of plaintiff and against the defendants, Wallace *435 E. Perry, individually and as administrator of the estate of his minor son, Mark E. Perry, T. G. & Y. Stores, Inc. and American and Foreign Insurance Company, in solido. The claim of plaintiff was dismissed as to the other defendants.
American and Foreign Insurance Company, T. G. & Y. Stores, Inc. and Wallace E. Perry have appealed from the trial court's well reasoned judgment. By prior agreement between the parties, the plaintiff has joined in the appeal.
The basic facts of the incident itself are without dispute; however, there is some disagreement among the witnesses as to the circumstances under which Mark E. Perry was driving the McDowell vehicle at the time of the accident. On the date of the accident, Mark E. Perry and Richard McDowell were both employed by T. G. and Y. Stores on Plank Road in Baton Rouge. Richard McDowell had driven the 1963 Chevrolet to work that morning as was his custom. In the early afternoon, one of McDowell's superiors, Jake C. Krause, an assistant manager of the store, approached McDowell in the stockroom and stated that it was necessary to use the 1963 Chevrolet to deliver some Christmas cards to the bus station. We are convinced from the testimony in the record that McDowell declined to let Perry drive the car on the basis that his father had instructed him not to let others drive the vehicle. We are further convinced that an argument ensued, that McDowell continued in his refusal, but that Krause took the key from the hand of McDowell and gave it to Perry, who drove the automobile away from the store. It was between the store and the bus terminal that the accident occurred. There is considerable dispute among the insurance companies as to whether McDowell gave his permission for Perry to drive the car and as to whether McDowell was empowered to give permission.
The trial court has accurately stated the defenses raised by Cumis, McDowell's insurer, and by Allstate, Perry's insurer, and we quote with approval as follows:
"Defendant Cumis, McDowell's insurer, maintains that its policy affords no coverage for the reason that Richard McDowell did not have permission to allow anyone else the use of the 1963 Chevrolet. If these are the facts, Cumis' policy affords no coverage, for it is clear from reading the policy that Defendant Cumis is responsible when persons other than the insured are driving the car only in those situations where such other persons are driving with the permission of the insured.[1]
"Morris E. McDowell, father of Richard McDowell, testified that he bought this 1963 Chevrolet two or three months before the accident; that it was titled in his (the senior McDowell's) name; that he paid $350.00 for the automobile and to obtain the purchase price borrowed that amount from the bank and arranged for twelve monthly installments. He says he knows that his son paid at least two monthly installments and might have paid as many as four, although he has no independent recollection of two of the payments nor any records to establish exactly by whom they were paid. He testified that in addition to the 1963 Chevrolet he owned a half ton pickup truck that he used almost exclusively. Until his son, Richard, obtained employment, the 1963 Chevrolet was used by his wife and Richard. At the time the son obtained employment, Mr. McDowell told him that he could use the car to go to and from work but that he would have to help with the notes, the maintenance and upkeep and other expenses. He testified that his wife had first priority on the use of the car and that Richard was also free to use it at nights if she, Richard's mother, did not need it. Mr. McDowell said he had no knowledge that the car would be used in *436 his son's employment at T G & Y other than as a means to go to and from work. He further stated that he had repeatedly instructed his son not to allow others to drive the car. He said the reason he had done this was that it was his impression that if others did drive it that his insurance would afford no coverage. He said that he did not have any knowledge of anyone else ever driving the car prior to the accident, contrary to his instructions. The evidence established that after the accident the vehicle was disposed of and that the salvage value of $150.00 was paid to Morris F. McDowell.
"Richard McDowell testified that the car belonged to his father and he had given him permission to use it to go to and from work but had told him not to let anyone else drive it. Young McDowell felt that his father's reason for these instructions was that the father felt there would be no insurance coverage if he, Richard, did allow others to drive it. Richard testified that his father reminded him of these instructions often and particularly every Friday and Saturday night when it was his custom to use the car on dates. He said on two occasions he had allowed one A. J. D'Antoni to use his car but that his father didn't know of these instances.
"The general rule in cases of this type is that the minor child of the named insured either in the capacity of an additional insured or first permittee cannot violate instructions of the named insured in permitting others to use the vehicle so as to place a second user in the position of an omnibus insured. The Supreme Court, in the case of American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969), covers a situation where the minor child of the named insured had broad, free and unrestricted use of the insured vehicle. Insofar as the facts of that case were concerned, the Court observed,
`Although Jesse G. Waters was named insured, the permission and authority delegated by him to Randy for the use of the car was so broad and so free of restrictions that it may safely be said that Waters delegated to Randy whatever authority he had to grant permission to others to drive the car. This circumstance, together with the uncontested fact that the automobile was paid for by Randy and the cost of its maintenance and operation was entirely borne by him from his earnings, places Randy in the position of the named insured clothed with all of his authority and rights under the policy.'
In this case, the evidence convinces this court that the named insured's minor son, Richard McDowell, had no such broad, free or unrestricted use of the Chevrolet automobile. The above case was cited in Devall v. State Farm Mutual Insurance Company, La.App., 249 So.2d 282. Three exceptions to the general rule precluding omnibus insured status were discussed, the first being the broad, free and unrestricted use of the vehicle by the minor, as in the Czarniecki case. The second is a situation where the minor child violates the restriction to the knowledge of the named insured who makes no significant protest. The third exception is an emergency situation where the first permittee, or minor, makes a specific request that the second permittee operate the vehicle. The facts of the instant case, as recited above, fit none of these exceptions, and this Court finds that no omnibus insured status was enjoyed by Mr. Perry as the driver of the Chevrolet automobile; consequently, no coverage was afforded in this situation by the Defendant Cumis Insurance Society, Inc.
"The Defendant Allstate contends that its policy afforded no coverage in the instant situation because of an exclusion clause which reads as follows:
`3. a non-owned automobile while used (a) in an automobile business by the insured, or (b) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his *437 private chauffeur or domestic servant, or a trailer used therewith;' (Emphasis supplied)
Defendant Allstate further contends that inasmuch as Mark E. Perry was driving a non-owned automobile in the course of his occupation, this exclusion should be applicable and should negate coverage for this accident. The evidence bearing on this contention is as follows. Mark E. Perry worked approximately thirty hours per week for T G & Y from 2:00 p. m. to 9:00 p. m.; at the same time he was an L.S.U. student carrying seventeen semester hours of college work at the time of the accident. He had worked for T G & Y approximately one year at the time of the accident, and at the time of the trial he was a full-time employee no longer attending school. His father, Wallace Perry, was at the time of this accident manager of the T G & Y Store where these witnesses were employed. Mr. Wallace Perry testified that his son was considered part time at the time of the accident because all students are considered part time employees regardless of how many hours they work. The strong contention made by Defendant Allstate was that at the time of the accident the non-owned automobile driven by Mark Perry was being used in Mark Perry's `occupation'."
This court agrees with and adopts the conclusion of the trial court that young Perry was not driving the McDowell vehicle with the permission of the named insured as required by the Cumis policy.
Likewise, we have no hesitation in adopting the trial court's finding that Perry was driving the 1963 Chevrolet, in the contemplation of the Allstate policy, as a non-owned automobile in his occupation. The obvious rationale of the exclusion in the Allstate policy is found in precisely a situation such as we have before us. The insurer is not undertaking by its policy to extend coverage to their policy holder while he is driving someone else's car in his business or occupation since the responsibility for providing insurance coverage should rest with the insured's employer or other person for whose benefit the business was being conducted. There is considerable argument by counsel and there was considerable interrogation of the witnesses relative to whether the work at the T. G. and Y. Store constituted young Perry's occupation. We do not think that the questions of whether he was a part-time or a full-time worker, whether he was a sometimes student and a sometimes store employee or whether he worked less than a forty hour week are determinative of the issue. We think that in the context presented, the term occupation refers to a situation where he is gainfully employed or operating a business and where he is going about the duties of his employment or business.
Even if we found that there was coverage under the liability policy issued by Allstate in this case, we are of the opinion that it would be excess as to the primary coverage of American and Foreign Insurance Company.
The Allstate policy provides that:
"... the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance."
The provision as to excess insurance would not apply, however, with respect to Cumis because the automobile was an owned automobile under the Cumis policy which provides only that:
"... the insurance with respect to a temporary substitute or non-owned automobile shall be excess insurance over any other valid and collectible insurance..."
We have been unable to find any statement in the American and Foreign Insurance Company policy with respect to excess coverage except for the statement on *438 the jacket of the policy which provides as follows:
"The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."
Therefore, as to Allstate it appears that even if coverage were found, the liability of Allstate would be excess as to the other collectible insurance.
For the reasons assigned we find that the trial court was correct in its decision, and it is affirmed.
Costs of this appeal are taxed against American and Foreign Insurance Company.
Affirmed.
NOTES
[1] The Cumis policy includes as insureds: "any other person using such automobile with the permission of the named insured..." (Footnote ours).