I,GREMILLION, Judge.
In this case, the defendant, Illinois National Insurance Company, appeals the judgment of the trial court finding that its insurance policy provided coverage for the wrongful death of the husband of the plaintiff, Marie LeBlanc. For the following reasons, we affirm.
FACTS
The instant litigation arises out of an automobile accident in which Leewood Le-Blanc was killed when the truck his son, Raywood, was driving left Highway 339, just outside Kaplan, Louisiana, and-collided with a culvert. The truck was a 1985 Ford pick-up truck owned by Robert “T-Bob” Domingues, owner of T-B'ob’s Seafood, a wholesale/retail seafood business in Kaplan. Domingues asked Raywood if, “as a favor,” he would travel to Henderson, Louisiana to pick up some crawfish for his business. The accident occurred while Raywood and Leewood were returning from Henderson with the crawfish.
Domingues employed Raywood to cut grass and do yard work at his home, but occasionally Raywood did unpaid personal favors for Domingues. Besides picking up crawfish, he also delivered ice to T-Bob’s and periodically stayed with Domingues’ brother-in-law when others in the business had to leave. Domingues’ brother-in law worked at T-Bob’s, but needed supervision as he was mildly mentally disabled and prone to seizures. Domingues returned Raywood’s favors by giving him crawfish to eat, buying him meals, and taking him to his fishing camp in Vermillion Bay. However, the favors were not repaid on a quid pro quo basis.
12Raywood owned a 1981 Ford Courier, which Illinois National insured, and it is this insurance policy that is at issue in this litigation. Marie sued individually and as the representative of the estate of her deceased husband. She settled her claim against ITT Hartford, the insurer of Do-mingues’ truck, for the applicable policy limit; she now seeks recovery under Ray-wood’s personal liability coverage. Illinois National contends no coverage exists because the business-use exception of Ray-wood’s insurance policy precludes its liability. After a trial on the merits, the trial court decided in favor of Marie, holding that the business-use exclusion did not apply. Illinois National appealed raising one assignment of error.
APPELLATE REVIEW
A court. of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
Id. at 844. Though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict ex *389 ists in the testimony. Id. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973). “[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the Ufactfinder’s conclusion was a reasonable one.” Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
INTERPRETATION OF CONTRACTS
“Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.” La.Civ.Code art. 2048. “Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” La.Civ.Code art. 2050. “A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.” La.Civ.Code art. 2056. If an exclusionary clause is deemed ambiguous, an insurance policy must be liberally construed in favor of coverage; provisions susceptible of different meanings must be interpreted with a meaning that renders coverage effective and not with one that renders it ineffective. La.Civ.Code art. 2049; Capital Bank & Trust Co. v. The Equitable Life Assurance Soc’y, 542 So.2d 494 (La.1989). If more than one reasonable view of the exclusion proviso exists, “any ambiguity must be construed against the insurance company and in favor of the reasonable construction that affords coverage.” RPM Pizza, Inc. v. Automotive Cas. Ins. Co., 601 So.2d 1366, 1369 (La.1992).
ASSIGNMENT OF ERROR
Illinois National contends that the trial court erred in finding coverage under Raywood’s policy. In particular, they contend that the policy issued to Raywood does not provide coverage for an unowned vehicle used for business purposes. Illinois National asserts the trial court committed reversible error by Rfinding that Raywood’s personal favor, based on the relationship between himself and Do-mingues, put the trip outside the scope of the business-use exception of Raywood’s personal insurance policy. The issue to be resolved here is whether Raywood, in doing a personal favor that was in furtherance of Domingues’ business, placed himself under the business-use exception of his personal automobile liability policy.
The business-use exclusion of Raywood’s policy reads as follows:
A. We do not provide Liability Coverage for any “insured”:
7. Maintaining or using any vehicle while that “insured” is employed or otherwise engaged in any “business” ..:.
Illinois National asserts that the exclusion bars from coverage accidents that occur in any vehicle while the insured is acting within the course and scope of his employment, as well as any situation construed to be in furtherance of any business. They contend that the “or otherwise engaged in any business” language of the exclusion does not necessarily require an employer/employee relationship, but that any activities that can be construed to benefit business objectives are excluded under the business-use exception.
In support of their position, Illinois National cites Lee v. Allstate Insurance Co., 274 So.2d 433 (La.App. 1 Cir.1973) and Redden v. Liberty Mutual Insurance Co., 327 So.2d 474 (La.App. 2 Cir.) writ denied, 331 So.2d 495 (La.1976). In Lee, 274 So.2d 433, the minor child of the insured was allowed to take a vehicle to and from work and on other limited excursions. The assistant manager at the department store, where the minor worked, asked the minor for the keys to his vehicle so that a coworker could use the vehicle to make a delivery for the store. When the |,.¡minor refused, the assistant manager took the keys from his hand and gave them to the *390 co-worker. While running the errand, the co-worker was involved in an accident.
The insurance company of the co-worker’s parents denied coverage pursuant to the following exclusion:
3. A non-owned automobile while used (a) in an automobile business by the insured, or (b) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith^] (Emphasis supplied)
Id. at 436-37.
The insurance company contended that the car was used in the insured’s son’s “occupation.” In holding that the insurance company was not liable pursuant to the exclusion clause, the court wrote the following:
Likewise we have no hesitation in adopting the trial court’s finding that [the co-worker involved in the accident] was driving the [automobile], in the contemplation of [his personal automobile insurance policy], as a non-owned automobile in his occupation. The obvious rationale of the exclusion in the [insurance] policy is found in precisely a situation such as we have before us. The insurer is not undertaking by its policy to extend coverage to their policy holder while he is driving someone else’s car in his business or occupation since the responsibility for providing insurance coverage should rest with the insured’s employer or other person for whose benefit the business was being conducted. There is considerable argument by counsel and there was considerable interrogation of the witnesses relative to whether the work at the [department store] constituted the [co-worker’s] occupation. We do not think that the questions of whether he was a part-time or a full time worker, whether he was a sometimes student and a sometimes store employee or whether he worked less than a forty hour week are determinative of the issue. We think that in the context presented, the term occupation refers to a situation where he is gainfully employed or operating a business and where he is going about the duties of his employment or business.
Id. at 437 (emphasis added).
|fiThe court in Lee focused on the “occupation” of the co-worker in determining that he fell within the exclusionary clause. The court specifically stated that the term occupation refers to a “situation where he is gainfully employed or operating a business and where he is going about the duties of his employment or business.” Id. The exclusionary clause in Lee seemed to contemplate only two situations: one in which the insured is operating a non-owned vehicle in furtherance of his own business and another in which the insured is in an employer/employee relationship operating a non-owned vehicle in furtherance of the employer’s interests.
In Redden, 327 So.2d 474, the Second Circuit addressed a case in which a widow sued to recover damages for the death of her husband in an automobile accident. The plaintiffs husband was hired on a onetime basis for $50.00 to $75.00[1] to drive a truck for a transport company from a railway yard in Shreveport to a buyer’s place of business in New Orleans. While en route to New Orleans, the truck was involved in an accident resulting in the death of the plaintiffs husband. .
The deceased’s automobile liability insurer in Redden was dismissed pursuant to summary judgment, and, thereafter, plaintiff filed an answer and third-party demand in which she admitted her husband’s employment by the transport company. The liability insurer again moved for summary judgment on the ground that the transport company was going to pay her husband for delivering the truck to New *391 Orleans and, as such, the following exclusionary clause was applicable:
This policy does not apply under Part I (liability insurance coverage): ... (h) to a non-owned automobile while maintained or used by any person while such person is Employed or otherwise engaged in (1) the ^automobile business of the insured or of any other person or organization, (2) Any other business or occupation of the insured....
Id. at 476.
In finding the exclusionary clause applicable, the court cited the passage from Lee discussed above and also seized on the following annotation from 85 A.L.R.2d 502:
Among the cases passing upon the question, it has generally been held that the term ‘business or occupation’ as used in the policy provision excluding coverage of a ‘non-owned’ or ‘other’ automobile while used in a ‘business or occupation’ of the insured is not restrictive in its meaning unless so made by a provision of the policy, and therefore the courts have construed the term to include not only the regular business or occupation of the insured upon which he primarily depends for his livelihood but also any other collateral business or occupation regardless of whether such a business or occupation is pursued for purposes other than pecuniary gain, and they have also construed the provision as applicable even where the insured is employed to drive a vehicle for one trip only, or where the insured, while in the employ of another, is driving an automobile on one particular occasion outside the duties ordinarily required of him.
Id. (emphasis added).
The court went on to say, “We have not found a Louisiana case which holds that driving a non-owned vehicle for compensation on a one-time basis only constitutes use of a non-owned automobile in the business or occupation of the insured.” Id.
Once again, the exclusionary clause appears to only contemplate the use of a non-owned vehicle as it relates to the insured’s business or when the insured is acting pursuant to his occupation. The court in Redden, as in Lee, found an employment relationship or business interest on the part of the insured a prerequisite to finding the exclusion applicable. The court then found that there existed an employee/employer relationship and that the insured was being compensated for his | sefforts. The courts in both eases associated “occupation” with work in exchange for pecuniary payment.
This court examined a situation somewhat similar in Argonaut Insurance Co. v. Pacific Indemnity Co., 256 So.2d 858 (La.App. 3 Cir.1972), In Argonaut, a bus carrying company employees to- a job site was struck by a tractor-trailer owned by the same company. The company’s workers’ compensation insurer settled the workers’ compensation claims and filed suit against, among others, the bus driver’s personal automobile insurer.
The insurer sought and received summary judgment on the matter of its liability, based, inter alia, on an exclusion in its policy which provided as follows:
This policy does not apply under Part I: (h) to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in (1) the automobile business of the insured or of any other person or organization, (2) Any other business or occupation of the insured, but this exclusion (h)(2) does not apply to a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant or a trailer used therewith or with an owned automobile:
Id. at 859.
Since the bus driver was engaged in his occupation at the time of the accident and driving something other than a private passenger vehicle, his insurer argued that the afore examined exclusionary clause denied coverage. However, the workers’ compensation insurer argued that the “person” referred to in the exclusion meant an employee of the insured engaged in the business of the insured. After ex *392 amining the totality of the insurance policy, this court concluded that had the word “persons,” as used-in the policy, been intended to exclude the named insured, the policy would have |9so provided. Accordingly, this court held that there was no coverage since the insured was operating a non-private passenger vehicle in the course of his occupation as a bus driver. Again, as with the two previous cases, an essential element in determining that there was no liability was that the insured was operating the non-owned vehicle pursuant to a formal employment arrangement.
We further look to Reed v. Arthur, 556 So.2d 937 (La.App. 3 Cir.1990),[2] where this court recognized that, under the umbrella of an employer/employee relationship, an employer could offer an employee transportation to its work site and' find such transportation as being gratuitous or voluntary, rather than an activity furnished as an incident to employment. To distinguish between them, the court inquired as to whether the activity undertaken was in “furtherance of the employer’s business when the injury occurred.” Id. at 942. To determine whether such action was in furtherance of the employer’s business, the court looked to see whether the transportation was pursuant to an employment agreement, whether express or implied. As there was nothing in the contract of employment indicating that transportation would be furnished by the employer, and there was no evidence that transportation had been provided in the past, the court determined the transportation to be merely a gratuitous offering outside the parameters of the employment relationship. In so doing, this court held that, under the wording of this insurance contract, in order to be considered “engaged in business” there had to be an employment relationship.
In the case at bar, the trial court determined that Raywood was doing a personal favor for Domingues, was not engaged in Domingues’ business, and hnRaywood’s actions did not constitute employment. The trial court further found that Raywood’s only employment relationship with Do-mingues was that of a household employee. In its reasons for ruling, the trial court stated:
It was personal between him and Mr. Domingues that he was doing a favor. It was a personal relationship. They had a personal relationship. I think it’s clear they had a personal relationship. He was good friends with his brother-in-law, and he often took care of his brother-in-law and they did things together, recreation together, and this was done as a personal favor. I think it’s a personal favor rather than a business relationship under the facts of this case.
We cannot say that the trial court was manifestly erroneous in its findings. In the cases cited above, an employment relationship provided the basis for finding the business-use exclusions applicable. Under the facts of this case, we find that the trial court was correct in finding that Raywood was not an employee of TUBob’s. Ray-wood was never required to arrive at T-Bob’s at a certain time and, in fact, was never required to go there at all. He was not paid for doing anything associated with Domingues’ seafood business, as he had a long-standing relation with Domingues and his family and they often did favors for one another.
Illinois National further asserts that it is of no consequence that Raywood was not determined to be an employee because the exclusionary clause is written broadly enough to encompass any activity in furtherance of a business. We disagree. We note the wording of Paragraph “7” of the exclusions in Raywood’s policy which states, “using any vehicle while that ‘insured’ is employed or otherwise engaged in any ‘business.’ ” The trial court interpreted this provision to mean that “the exclusion is to the insured’s business.” Under the wording of this policy, we cannot say that the trial court’s interpretation *393 was not reasonable. See Article 2049; Capital Bank & Trust Co., 542 So.2d 494; RPM Pizza Inc., 601 So.2d 1366. When this court, as well as our colleagues in other circuits, has been called upon to interpret business-use exclusions; it has uniformly held that those exclusions relate to the insured’s business or to that of his employers. Raywood’s agreement to pick up crawfish in Henderson was offered out of courtesy and not out of an obligation of employment. Even though that action might have benefitted Domingues, Ray-wood was not employed by Domingues, nor was he engaged in any “business.” Accordingly, we find that Illinois National’s assignment of error lacks merit.
CONCLUSION
The ruling of the trial court is affirmed. The costs of this appeal shall be paid by the defendant-appellant, Illinois National Insurance Company.
AFFIRMED.

. The exact amount to be paid for the trip was dependent on the expenses incurred during the trip.

. Reed involved a circumstance in which an employee was injured in a collision while his employer’s brother, a co-employee, was driving .him to a job site in the employer’s truck.